PAUL P., et al., Plaintiffs,

v.

John J. FARMER, Jr., Attorney General of New Jersey, et al., Defendants.

Civil Action No. 97–2919 (JEI).

United States District Court, D. New Jersey.

April 11, 2000.

Susan L. Reisner, Public Defender for New Jersey by Michael Z. Buncher, Deputy Public Defender, Edward Barocas, Assistant Deputy Public Defender, for Plaintiffs.

John J. Farmer, Jr., Attorney General of New Jersey by Stephan Finkel, Senior Deputy Attorney General, Trenton, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is plaintiffs' motion to enforce this Court's injunction of January 24, 2000. For the reasons set forth below, this motion is denied and the injunction is vacated.

### I.

On March 16, 1999, the Third Circuit held that New Jersey's Registration and Community Notification Act, N.J.S.A. 2C:7–1 et seq. ("Megan's Law") was constitutional on its face. Paul P. v. Verniero, 170 F.3d 396 (3d Cir.1999). However,

while the case was pending before the Third Circuit, the parties filed several motions to supplement the record. The Circuit Court declined to consider these motions and instead remanded the case back to this Court so that it could consider the material contained in the motions to "determine whether any action is appropriate" in light of Third Circuit precedent. *Id.* at 406. Specifically, the Third Circuit directed this Court to consider its previous holding in *Fraternal Order of Police v. Philadelphia,* 812 F.2d 105 (3d Cir.1987). In that case, the Third Circuit held that "the fact that protected information must be disclosed to a party who has a particular need for it ... does not strip the information of its protection against disclosure to those who have no similar need." *Id.* at 118.

On January 24, 2000, this Court held that the Megan's Law notification procedures were unconstitutional because they did not adequately safeguard against the unauthorized disclosure of protected information. The Court noted that, as it was then administered, the law contained no uniform method of disclosure which ensured that Megan's Law information was disseminated to those "with a particular need for it" while avoiding disclosure to those who had no similar need. *Paul P. v. Farmer,* 80 F.Supp.2d 320, 325 (D.N.J. 2000). The Court directed defendants to redraft the Attorney General Guidelines to "reasonably limit disclosure to those entitled to receive it." *Id.* Also, the Court issued an Order enjoining defendants from commencing any further notifications until the Attorney General promulgated Guidelines which complied with the Opinion of the Court. The Court stayed this injunction pending appeal to and decision by the Third Circuit. However, by Consent Order dated March 23, 2000, the stay was modified "to provide the Attorney General with 45 days to promulgate revised Guidelines."

On March 22, 2000, this Court received a copy of the Attorney General's revised Guidelines captioned "Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws." The revised Guidelines, effective March 23, 2000, depart from the original Guidelines in several respects. Most significantly, the revised Guidelines now provide two versions of notice forms: an "unredacted" form and a "redacted" form. The unredacted notice form contains the exact home address of the Megan's Law registrant ("registrant") along with the registrant's name, photograph, description, license plate number, vehicle description, and sex offender status. (Rev.Guid., 24). The redacted version contains all of the latter information, but replaces the exact street address of the registrant with more general information such as the block number or intersection nearest the offender's residence. (*Id.*)

Under the revised procedures, only those individuals who sign a receipt form may receive the unredacted notice. (*Id.* at 43). Members of the community who are within the scope of notification, but who decline to sign the receipt form, receive the redacted notice. (*Id.*). The receipt form states, in pertinent part:

> I will comply with the Order of the Court which allows me to receive the sex offender information provided to me;
>
> I will comply with the Megan's Law Rules of Conduct which have been provided to me;
>
> I will submit to the jurisdiction of the Court.

(Defs.' Ex. Q).

The Guidelines state that persons who do not sign the receipt form and therefore receive the redacted rather than the unredacted form are told that they are, nonetheless, bound by the applicable "Rules of Conduct." (Rev.Guid., 43). The Attorney General has created four types of "Rules of Conduct" forms. One form is tailored for school personnel, one for community organization officials, one for community members and one for businesses. (*See* Defs.' Ex. H, I, J, K). The "Rules of Conduct" for community members states

that "[d]oing the following is inappropriate and may result in court action or prosecution being taken against you" and lists the following prohibitions:

1. Do not share the information in this notification flier, or the flier itself, with anyone outside of your household or anyone not in your care. Do not share the information in this notification flier, or the flier itself, with the media.

2. Do not make any copies of this notification flier, or reproduce it in any way.

3. Do not post this notification flier in a public location, or display it in a place where it is visible to persons who are not members of your household. Do not attempt to harm the offender or his/her property. Do not attempt to harass the offender or make unsolicited, unwanted contact. If you believe the individual is a physical threat to you or children in your care, please contact your local police.

4. Do not take any action against the offender's family, household members or employer that may in any way harm or harass a person or property.

(Defs.' Ex. J). Each of the Rules of Conduct forms also states, "[i]f you are not certain whether sharing the notification flier with a particular individual or disclosing the notification information would be appropriate under particular circumstances, you should contact the Megan's law unit in the County Prosecutor's Office." (*Id.*).

Under the revised Guidelines, businesses authorized to receive notification under Tier 2 receive only the redacted notice. (Rev.Guid., 43–33). In community organizations receiving Tier 2 notices, a responsible official is vested with discretion to distribute either the redacted or unredacted version to staff members depending upon the nature of the organization's activities or its proximity to a sex offender's residence. (*Id.* at 40). Similarly, school principals are authorized to share the redacted notice with those staff members who are in a position to observe unauthorized persons on or near school property. (*Id.* at 35). Principals may share the unredacted version only with those staff members whose job duties require specific knowledge of a registrant's exact home address, such as security guards or bus monitors. (*Id.*). Every recipient of the unredacted notice, either in a community organization or a school, must sign the receipt form.

The revised Guidelines have also changed the method of delivery of Megan's Law notices in several ways. Under the revised Guidelines an initial attempt is made to hand deliver Tier 3 notices. (*Id.* at 42). If an adult resident aged 18 or over is not present to receive the notice, a letter or door hanger is left which directs the resident to contact the local law enforcement agency or County Prosecutor's Office to receive important public safety information. (*Id.*). Also, where Tier 3 notification is authorized for the parents and guardians of children attending a school within the zone of notification, notices are no longer sent home with students. Under the revised Guidelines, a redacted notice is sent directly to the parents or guardians by regular mail along with the signed Court Order and a copy of the Rules of Conduct. (*Id.* at 44–45).

Plaintiffs acknowledge that the "Attorney General has gone to great lengths in the [r]evised Guidelines toward ensuring uniform distribution of Megan's Law information." However, they argue that the revised Guidelines remain deficient in two respects. (Pls.' reply, 1). First, plaintiffs argue that the revised Guidelines are deficient because they do not require the issuance of a court order which would make the recipient of sex offender information subject to contempt of court sanctions for subsequent unauthorized disclosures. Second, plaintiffs argue that a person's block of residence is constitutionally protected information which will be disseminated without any safeguards against its improper use in the "redacted" notices. The Court will consider each argument in turn.

## II.

■ In this Court's Opinion on January 24, 2000, the Court emphasized the importance of the "adequacy of safeguards" in upholding a statute against a privacy challenge. The Court stated:

Defendants ask the Court to overlook any deficiencies in the current system in light of the compelling purposes served by the Act. However, the procedural safeguards contained within the Attorney General Guidelines are crucial to maintaining the constitutional balance between plaintiffs' privacy interests and the goals of the statute. *See Fraternal Order of Police,* 812 F.2d at 117 ("One of the crucial factors in weighing the competing interests referred to in *Westinghouse* is 'the adequacy of safeguards to prevent unauthorized disclosure.' ")(quoting *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3d Cir.1980)). If, in practice, these safeguards fail to limit the release of plaintiffs' home addresses to those persons with a statutorily defined need for this information, a different constitutional balance would result.

*Paul P.,* 80 F.Supp.2d at 325. Plaintiffs argue that the Guidelines will continue to violate registrants' rights to privacy as long as they fail to require that the contempt of court sanction be available for imposition on a person who wrongfully discloses Megan's Law data to a person not entitled to receive it. They argue that as currently administered, in 11 of New Jersey's 21 counties, there is no enforceable mechanism for imposing contempt of court sanctions on recipients of Megan's Law notices who pass protected information to unauthorized persons.

In *Fraternal Order of Police,* 812 F.2d 105, plaintiff police union challenged the constitutionality of a questionnaire promulgated by the City police department for use in selecting applicants for a special unit. The district court held that many of the questions included within the questionnaire violated applicants' privacy rights and enjoined the City from including these questions. The Third Circuit ordered the district court to continue the injunction with respect to several questions until the City enacted "binding rules that contain adequate safeguards against unnecessary disclosure of the confidential information elicited in response to the [ ] questionnaire." *Id.* at 118.

In reaching this conclusion, the Third Circuit held that the adequacy of safeguards was "[o]ne of the crucial factors in weighing the competing interests referred to in *Westinghouse.*" *Id.* at 117–118.[1] The Court emphasized that, in this case, there was no directive to City employees which limited access to the responses to specific employees or specified the proper method for handling and storing the responses. *Id.* at 118. In addition, the Court noted that there was no statute or regulation which "penalize[d] officials with confidential information from disclosing it." *Id.*

The Court in *Fraternal Order of Police* stated that safeguards against disclosure "have been held to be adequate when there exists a statutory penalty for unauthorized disclosures." *Id.* However, the Court did not hold, as plaintiffs suggest, that safeguards are automatically inadequate in the absence of such statutory penalties. In fact, the cases suggest that the adequacy of safeguards, like the entire *Westinghouse* balancing test, is a flexible determination

---

1. In *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 578 (3d Cir.1980), the Third Circuit outlined several factors which the Court should consider in balancing the harm caused by an intrusion into an individual's privacy against the public interests served by a statute: (1) the type of record requested; (2) the information it contains; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosures; (6) the degree of need for access; and (7) "whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access."

to be made based upon the facts of the particular case and the goals of the particular statute. *See Faison v. Parker*, 823 F.Supp. 1198, 1204 (E.D.Pa.1993)("The safeguards deemed adequate by the Supreme Court in *Whalen* and the Third Circuit in *Westinghouse*.. are not standards which must be used in all cases, but rather are procedures that courts may consider in determining the sufficiency of the safeguards against disclosure of confidential information at issue in those cases.").

The facts of this case and the goals of Megan's Law are in many ways unique. In *Westinghouse* and *Fraternal Order of Police*, confidential information was gathered for the use of public officials. In these cases, the ultimate purpose of gathering the information was to serve the public interest, but the information gathered was not itself disseminated to the public. In contrast, the overriding purpose of Megan's Law is to place information about sex offenders directly in the hands of the public.

In light of the unique purposes of Megan's Law, the Attorney General has devised a reasonable method of distributing sex offender information to authorized persons, while avoiding disclosure to unauthorized persons. Under the revised Guidelines, only those persons within the scope of notification as defined by a Court are sent Megan's Law notices. The county prosecutors charged with delivering these notices are given explicit and detailed instructions regarding the appropriate methods of distribution. In addition, as noted in the Court's previous Opinion, there are statutory penalties which may be enforced against public officials who distribute Megan's Law information improperly.[2] *See Paul P.*, 80 F.Supp.2d at 324.

The Attorney General's office has indicated that it is currently working with Megan's law judges to incorporate contempt of court language into all Megan's Law orders. (*See* Defs.' brief, 19).[3] If contempt of court language is incorporated into all Megan's law orders and if contempt sanctions are uniformly enforced, the number of unauthorized disclosures may be reduced even further. However, the Guidelines as currently written are constitutional. As the Court emphasized in its previous Opinion, a system in which there are no unauthorized disclosures is practically unattainable. *See e.g., Schachter v. Whalen*, 581 F.2d 35, 37 n. 2 (2d Cir.1978) (upholding New York statute which allowed state medical board to subpoena patients' medical records even though protection of confidential information was "not foolproof so that the risk of inadvertent disclosure remain[ed]."). Thus, the mandate this Court issued to defendants was not to create a perfect system, but one reasonably calculated to get the information to those with "a particular need for it" while avoiding "disclosure to those who have no similar need." *Fraternal Order of Police*, 812 F.2d at 118. The revised Guidelines meet this standard.

### III.

■ Plaintiffs next argue that information contained in the redacted notices is constitutionally protected and will be dis-

---

**2.** Defendants argue that an additional safeguard against improper disclosure is the requirement that notice recipients sign the receipt form and agree to the Rules of Conduct in the presence of a law enforcement officer. Plaintiffs state that such "moral and psychological suasion does not equate in deterrent effect with a legally enforceable contempt sanction." (Pls.' reply, 4). This may be true. However, the deterrent effect of signing the receipt form in the presence of a law enforcement officer should not be dismissed too quickly. Indeed, the entire jury system is built upon the assumption that jurors, for moral and psychological purposes, will try "to live up to the sanctity of [their] oath." *Dennis v. United States*, 339 U.S. 162, 171, 70 S.Ct. 519, 94 L.Ed. 734 (1950).

**3.** Defendants state that "preliminary discussions ha[ve] taken place with the Honorable David S. Baime, J.A.D., the Chair of the three-judge Megan's Law Disposition Review Committee ..., the Honorable Lawrence M. Lawson, A.J.S.C., and members of the Administrative Office of the Courts ..." (Defs.' brief, 19 *).

tributed to persons without any protection against its unauthorized use. According to plaintiffs, the constitutional right to privacy protects information such as the block on which a registrant lives or the intersection nearest his home. Defendants argue that the constitutional right to privacy protects a person's address, but does not extend to the "general vicinity" in which a person lives.

The right to privacy upon which plaintiffs' claims are based derives from the Supreme Court's opinion in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). In *Whalen*, the Supreme Court held that the constitutional right to privacy encompasses an individual's interest in avoiding disclosure of personal information. *Id.* at 599–600, 97 S.Ct. 869. Thus, the Court ruled that copies of plaintiffs' prescriptions for certain drugs were entitled to privacy protection. Subsequent decisions have interpreted the right to privacy outlined in *Whalen* to apply to a person's medical records and certain financial information. *See Fraternal Order of Police*, 812 F.2d at 115 (recognizing that certain financial records should be afforded constitutional protection); *Westinghouse*, 638 F.2d at 577 (extending privacy protection to medical records).

In its opinion in this case, the Third Circuit stated that, "[i]n determining whether information is entitled to privacy protection, we have looked at whether it is within an individual's reasonable expectations of confidentiality." *Paul P.*, 170 F.3d at 401 (citing *Fraternal Order of Police*, 812 F.2d at 112–113). The Court went on to state that it was "not insensitive" to the argument that plaintiffs had a privacy in-

terest in their home addresses. *Id.* at 404. The Court stated that the cases reflected a "general understanding" that home addresses are entitled to "some privacy protection" and concluded: "[w]e are therefore unwilling to hold that absent a statute, a person's home address is never entitled to privacy protection. As the Court said in *Department of Defense*, persons 'have some nontrivial privacy interest in nondisclosure ...'" *Id.* (citing *U.S. Dept. of Defense v. FLRA*, 510 U.S. 487, 501, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994)).

Although the existence of a right to privacy in personal information is now relatively well-established, the boundaries of that right are less clear. *See Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir.1991)("[T]he contours of the confidentiality branch are murky."). However, several cases have suggested that this constitutional protection will extend only to information which is extremely personal or intimate. *See Fraternal Order*, 812 F.2d at 112–13 ("The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny."); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994) ("[T]here are few matters that are quite so personal as the status of one's health"); *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir.1988) (holding that constitutional protection against public dissemination of private information extends only to matters regarding "the most intimate aspects of human affairs."). Information concerning the general area in which a person lives is not information of an extremely personal or private nature. Nor is this information generally within a person's "reasonable expectations of confidentiality." *Id.* at 401.[4]

4. Most people have no particular interest in keeping their home address secret. They willingly have their addresses listed in the phone book and take no steps to hide their location. It may be that individuals in the witness protection program, battered women or those with reason to fear the actions of others have a particularized need to keep their home addresses hidden. Performers, public officials and some "ordinary folk" may also desire to conceal their home addresses. *See, Paul P.*,

170 F.3d at 404. However, those seeking to hide their home addresses are a distinct minority. One can certainly imagine that sex offenders may want to keep their whereabouts or past history secret, but it is the very predictability of this desire which has, in part, spurred the legislature to pass Megan's Law. This compelling state interest justifies disclosure of otherwise private information, and the adequacy of the protections surrounding this disclosure must be measured in light of this

Thus, this Court is unwilling to hold, absent persuasive authority, that information regarding the general vicinity in which a person lives is constitutionally indistinguishable from a person's exact street address.

 Plaintiffs also argue that a street name or block number is entitled to constitutional protection because it may lead people to discover a registrant's "exact" street address. Specifically, plaintiffs state:

> By disclosing the street name and block on which a registrant resides or the name and address of his motel, along with the registrant's name, photograph, description, and vehicle identification and license plate number, the State has given more than enough information for a recipient—many of whom live within blocks of the registrant—to know or easily discover a registrant's 'exact' street address, if so desired.

(Pls.' brief, 10). In today's world, much "private" information can be uncovered about a person from non-private sources. In most cases, a person with the inclination and internet access can discover a another's home address without great effort. Were this Court to expand the Supreme Court's holding in *Whalen* to protect all information which may "lead to" the discovery of private information, very little information would be free from constitutional protection. The Court declines to read *Whalen* so broadly.

### IV.

For the reasons set forth above, plaintiffs' motion to enforce the injunction is denied. Because the Court has concluded that the revised Attorney General Guidelines comply with the Court's previous

strong state concern and in light of the relatively low expectation of privacy with respect to one's home address. *Compare, Commonwealth of Pennsylvania v. Duncan*, 2000 WL 343328 (Pa.Super.Ct. 2000) and cases cited therein.

**5.** At oral argument, plaintiffs asked the Court to stay its decision pending appeal to the

Opinion, the injunction against disseminating Megan's Law notices is vacated. The Court will issue an appropriate order.[5]

Third Circuit if the Court decided to vacate the injunction. Because the Court does not see any potential for irreparable harm in the relatively short period of time necessary to appeal this decision to the Third Circuit, the Court, in its discretion, will deny this request. *See* Fed.R.Civ.P. 62(c).