

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-11-2000

# P. v. Attorney Gen'l NJ

Precedential or Non-Precedential:

Docket 00-5244

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"P. v. Attorney Gen'l NJ" (2000). *2000 Decisions.* Paper 194.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/194

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 11, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5244

PAUL P, (a minor, by Laura L, his legal guardian);
QUINCY Q; RONALD R; STEVEN S, (a minor, by Sally S,
his legal guardian), (all fictitious names), Individually and
as Representatives of a class pursuant to Fed.R.Civ.P.23
(a) and 23(b) (2)

v.

JOHN J. FARMER, JR.*, Attorney General New Jersey;
JEFFREY S. BLITZ, Atlantic County Prosecutor; WILLIAM
SCHMIDT, Bergen County Prosecutor; ROBERT D.
BERNARDI*, Burlington County Prosecutor; LEE A.
SOLOMON, Acting Camden County Prosecutor; DAVID E.
BLAKER*, Cape May County Prosecutor; ARTHUR
MARCHAND, Cumberland County Prosecutor; DONALD C.
CAMPOLO*, Essex County Prosecutor; ANDREW YURICK,
Gloucester County Prosecutor; FRED J. THEEMLING,
JR.*, Hudson County Prosecutor; STEPHEN B. RUBIN,
Hunterdon County Prosecutor; DANIEL G. GIAQUINTO*,
Mercer County Prosecutor; GLENN E. BERMAN*,
Middlesex County Prosecutor; JOHN KAYE, Monmouth
County Prosecutor; JOHN B. DANGLER, Morris County
Prosecutor; E. DAVID MILLARD*, Ocean County
Prosecutor; RONALD S. FAVA, Passaic County Prosecutor;
JOHN E. BERGH*, Salem County Prosecutor; WAYNE W.
FORREST*, Somerset County Prosecutor; DOLORES M.
BLACKBURN*, Sussex County Prosecutor; THOMAS V.
MANAHAN*, Union County Prosecutor; JOHN G. LAKY,*
Warren County Prosecutor,

PAUL P. and RONALD R.,
        Appellants

* Amended Pursuant to Fed. R. App. P. 43(c)(2)

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 97-2919
District Judge: The Honorable Joseph E. Irenas

Argued: July 12, 2000

Before: BARRY and GREENBERG, Circuit Judges, and
OBERDORFER,* District Judge

(Opinion Filed: September 11, 2000)

        Edward L. Barocas, Esquire (Argued)
        Michael Z. Buncher, Esquire
        Office of Public Defender
        Richard J. Hughes Justice Complex
        P.O. Box 850
        Trenton, New Jersey 08625

         Attorneys for Appellants

        John J. Farmer, Jr., Esquire
         (Argued)
        Rhonda S. Berliner-Gold, Esquire
        B. Stephan Finkel, Esquire
        Office of Attorney General of
         New Jersey
        Richard J. Hughes Justice Complex
        P.O. Box 80
        Trenton, New Jersey 08625

        Steven S. Sand, Esquire
        Office of Prosecutor of
         Gloucester County
        Broad & Hunter Streets
        P.O. Box 623
        Woodbury, NJ 08096

_____

* The Honorable Louis F. Oberdorfer, United States District Judge for the
District of Columbia, sitting by designation.

2

Maureen O'Brien, Esquire
Office of Prosecutor of Union County
County Administration Building
Elizabeth, NJ 07207

 Attorneys for Appellees

Robert J. Cleary, United States
 Attorney
George S. Leone, Assistant United
 States Attorney (Argued)
970 Broad Street
Room 700
Newark, New Jersey 07102

David W. Ogden, Acting Assistant
 Attorney General
Leonard Schaitman and Lowell
 Sturgill, Attorneys, Appellate Staff,
United States Department of Justice,
 Civil Division
Room 9152, 601 "D" Street, N.W.
Washington, D.C. 20530

 Attorneys for United States as
Amicus-Curiae Supporting Appellees

OPINION OF THE COURT

BARRY, Circuit Judge.

For several years now, the District Court and this Court have been adjudicating appellants' various challenges to the dissemination of sex offender notices in New Jersey under what has popularly become known as "Megan's Law." As to one of those challenges, and alone among the Courts of Appeals which have considered Megan's Law cases, we found that sex offender notices implicate a nontrivial privacy interest, albeit only with respect to one piece of information -- the home address of the offender. This litigation, however, now comes to an end, for we conclude that appellees have shown, in the words of our prior order of remand, that appellants' "interest in assuring that

information is disclosed only to those who have a particular need for it has been accorded adequate protection" by the Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender and Community Notification Laws (Mar. 2000) (the "New Guidelines"). Paul P. v. Verniero, 170 F.3d 396, 406 (3d Cir. 1999) ("Paul P. I"). Accordingly, we will affirm.

I.

Megan's Law, so named for Megan Kanka, a little girl who was sexually abused and murdered by a twice-convicted sex offender, was enacted "to identify potential recidivists and alert the public when necessary for the public safety." E.B. v. Verniero, 119 F.3d 1077, 1097 (3d Cir. 1997). Given that laudatory goal, therefore, this case begins with the understanding and, indeed, the requirement that what might otherwise be private information be made public.

As we set forth in great detail in Artway v. Attorney General, 81 F.3d 1235 (3d Cir. 1996), Megan's Law "requires all persons who complete a sentence for certain designated crimes involving sexual assault after Megan's Law was enacted to register with local law enforcement." Id. at 1243; see also N.J.S.A. S 2C:7-2."The registrant must provide the following information to the chief law enforcement officer of the municipality in which he [or she] resides: name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, address of legal residence, address of any current temporary legal residence, and date and place of employment." Artway, 81 F.3d at 1243; see also N.J.S.A.S 2C:7-4b(1). Once the information is provided by the sex offender, it is forwarded "to the Division of State Police, which incorporates it into a central registry and notifies the prosecutor of the county in which the registrant plans to reside." Artway , 81 F.3d at 1243. At this stage, the information is not yet available to the public.

Once the information is received in the prosecutor's office of the county in which the registrant plans to reside, that office, in consultation with the prosecutor's office of the county in which the registrant was convicted, "determine[s]

4

whether the registrant poses a low, moderate, or high risk of reoffense. In making that determination, the prosecutor must consider the guidelines the Attorney General has promulgated pursuant to the Act." Id. at 1244 (citing N.J.S.A. SS 2C:7-8d(1), 2C:7-8a to b). The law mandates that

> [e]very registrant at least qualif[y] for Tier 1 treatment, otherwise known as `law enforcement alert,' where notification extends only to law enforcement agencies likely to encounter the registrant. N.J.S.A. S 2C:7-8c(1). In the case of those registrants posing a moderate risk of reoffense, Tier 2 notification, or `law enforcement, school and community organization alert,' issues to registered schools, day care centers, summer camps, and other community organizations which care for children or provide support to women and where individuals are likely to encounter the sex offender. N.J.S.A. S 2C:7-8c(2). The high risk registrants merit Tier 3's `community notification,' where members of the public likely to encounter the registrant are notified. N.J.S.A. S 2C:7-8c(3).

E.B., 119 F.3d at 1083. After a classification tier is determined, the prosecutor notifies the registrant of the proposed notification and he or she can then challenge the classification through a pre-notification judicial review process in state court.

Appellants in this case "are Tier 2 and Tier 3 registrants who have been certified as a class and whose offenses were committed after the enactment of Megan's Law." Paul P. I, 170 F.3d at 399. On June 16, 1997, appellants filed a class action complaint against the Attorney General of New Jersey and all twenty-one county prosecutors (collectively, the "State defendants") alleging that Megan's Law violated their constitutional rights of privacy and due process, and constituted cruel and unusual punishment. After thefiling of the complaint, however, this Court rejected most of the same claims in E.B. v. Verniero. See 119 F.3d at 1111. Pursuant to E.B., therefore, the District Court granted summary judgment to the State defendants on October 29, 1997. See Paul P. v. Verniero, 982 F. Supp. 961, 962-963 (D.N.J. 1997). With respect to the right to privacy claim, the

5

Court held that the information did not fall "within the `zones of privacy' protected under the Constitution." Id. at 966.

On appeal to this Court, appellants raised only one issue: whether the dissemination of notices under Megan's Law violates their constitutional right to privacy. See Paul P. I, 170 F.3d at 399. Specifically, appellants "argue[d] that the statutory requirement that the class members provide extensive information to local law enforcement personnel, including each registrant's current biographical data, physical description, home address, place of employment, schooling, and a description and license plate number of the registrant's vehicle, and the subsequent community notification is a violation of their constitutionally protected right to privacy." Id. at 398.

We rejected appellants' claim "[t]o the extent that . . . [the] alleged injury stems from the disclosure of their sex offender status, alone or in conjunction with other information." Id. at 403. We explained that "the District Court's opinion is in line with other cases in this court and elsewhere holding specifically that arrest records and related information are not protected by a right to privacy." Id.

With respect to the disclosure of home addresses, however, we took a different position. As we explained:

> The compilation of home addresses in widely available telephone directories might suggest a consensus that these addresses are not considered private were it not for the fact that a significant number of persons, ranging from public officials and performers to just ordinary folk, choose to list their telephones privately, because they regard their home addresses to be private information. Indeed, their view is supported by decisions holding that home addresses are entitled to privacy under FOIA, which exempts from disclosure personal files `the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'

Id. at 404 (quoting 5 U.S.C. S 552(b)(6)). We also noted that:

> Plaintiffs' primary argument receives further support from the New Jersey Supreme Court holding, relying on

6

FOIA cases, that `[t]he fact that plaintiff's home address may be publicly available' aside, privacy interests were implicated by the disclosure of the home address along with the other information.

Id. (quoting Doe v. Poritz, 142 N.J. 1, 83 (1995)). From these cases, we concluded that there is a "general understanding that home addresses are entitled to some privacy protection, whether or not so required by a statute." Id. We were, therefore, "unwilling to hold that absent a statute, a person's home address is never entitled to privacy protection," and instead accepted appellants' claim "that there is some nontrivial interest in one's home address by persons who do not wish it disclosed." Id.

Having accepted the argument that there was a privacy interest, we proceeded to determine whether the information was nonetheless subject to disclosure in light of a compelling governmental interest. See United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980) (holding that an individual's privacy interest is not absolute and, therefore, can be curtailed by some governmental interests). Based on the governmental interest at stake in Megan's Law, we concluded that the privacy interest must give way:

> The nature and significance of the state interest served by Megan's Law was considered in E.B. There, we stated that the state interest, which we characterized as compelling, `would suffice to justify the deprivation even if a fundamental right of the registrant's were implicated.' E.B., 119 F.3d at 1104. We find no reason to disagree. The public interest in knowing where prior sex offenders live so that susceptible individuals can be appropriately cautioned does not differ whether the issue is the registrant's claim under the Double Jeopardy or Ex Post Facto Clauses, or is the registrant's claim to privacy. Thus, as the District Court concluded, the plaintiffs' privacy claim based on disclosure of information must fail.

Paul P. I, 170 F.3d at 404.

In reaching our conclusion, we declined to address appellants' "evidence of recent incidents which have caused

7

serious adverse consequences to" appellants and their families. Id. at 406 (noting that appellantsfiled several motions "seeking to supplement the record"). 1 We reasoned that in light of our holding, "the material [was] not relevant to a determination of the issue before us -- whether Megan's Law's notification provisions violate plaintiffs' constitutional right to privacy." Id. We recognized, however, that

> this court has previously held that `[t]he fact that protected information must be disclosed to a party who has a particular need for it . . . does not strip the information of its protection against disclosure to those who have no similar need,' and we have required the government to implement adequate safeguards against unnecessary disclosure.

Id. (quoting Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia, 812 F.2d 105, 118 (3d Cir. 1987)). We, therefore, remanded the case to the District Court so that it could "consider whether plaintiffs' interest in assuring that information is disclosed only to those who have a particular need for it has been accorded adequate protection in light of the information set forth in the motions." Id.

On remand, appellants raised the following challenges to the notification system:

> (1) the Law lacks penalties to deter the unauthorized disclosure of information; (2) there is no uniform requirement that the registration process occur in a setting which protects the registrant's privacy; (3) many counties have inconsistent or unclear rules regarding which school staff members are entitled to receive information concerning Tier 2 offenders; (4) not all counties deliver Tier 3 notices by hand to an authorized adult; and (5) home addresses are included

_____

1. Those incidents, provided in the record for our review, include the loss
of employment, forced eviction from residence, threats of physical harm, and gun shots being fired into a registrant's home following the unauthorized dissemination of notification fliers to the general public and the media.

8

in all Tier 2 notices and are disclosed to all notice recipients despite the fact that this information is not needed by all recipients.

Paul P. v. Farmer, 80 F. Supp. 2d 320, 322–23 (D.N.J. 2000) (footnotes omitted). The State defendants countered, inter alia, by citing various sections of the then-in-place AG Guidelines "which caution against improper disclosure of Megan's Law information." Id. at 323. The District Court noted, however, that appellants had "summarized forty-five incidents where confidential information released under Megan's Law was distributed to unauthorized persons" as well as "provided many equally glaring examples where Megan's Law notices were publicly disseminated." Id. at 324–25. The Court, therefore, rejected the State defendants' suggestion that the Court should "overlook any deficiencies in the current system in light of the compelling purposes served by the Act." Id. at 325. The Court explained that "the procedural safeguards contained within the Attorney General Guidelines are crucial to maintaining the constitutional balance between plaintiffs' privacy interests and the goals of the statute. If, in practice, these safeguards fail to limit the release of plaintiffs' home addresses to those persons with a statutorily defined need for this information, a different constitutional balance would result." Id. (citation omitted). The Court observed that

[a] system of distributing this information with zero `leakage' to unauthorized persons is, in reality, unattainable. However, the mandate for the Attorney General is not to devise a perfect system, but one calculated to achieve the goals of the statute without unreasonably impinging on the `nontrivial' privacy interests of the plaintiffs. The record before this Court shows that the current system fails to meet this standard. Currently, there is no uniform method of distribution which ensures that, in all twenty-one counties, Megan's Law notices will be distributed in a manner reasonably calculated to get the information to those with `a particular need for it' while avoiding `disclosure to those who have no similar need.'

9

Id. Accordingly, the Court ordered that the Guidelines be redrafted. See id.

Along with its Opinion of January 24, 2000, the District Court issued an Order "enjoining the enforcement of Megan's Law until the Attorney General promulgates Guidelines which comply with the holding of this Court." Id. at 326. The Court, however, "temporarily suspended the enforcement of this injunction pending appeal to and decision by the Third Circuit." Id. No appeal was pursued at that time. Instead, the parties entered into a consent order allowing the State defendants until March 23, 2000 to promulgate new guidelines.

On March 23, 2000, the Attorney General issued the New Guidelines, certain discrete portions of which are the subject of this appeal. See App. at 76. As everyone, including appellants, agrees, the Attorney General has gone to great lengths in the New Guidelines toward ensuring uniform distribution of Megan's Law notices.

The New Guidelines call for two types of notices to be prepared for each registrant: "[1] an Unredacted Notice, which includes all sex offender information without omission, and [2] a Redacted Notice, which omits the specific street number of the offender's home and the exact street address and business name of the offender's employer." Id. at 102. "The Redacted Notice may include the street name and block number or nearest cross-street of the offender's residence and workplace, but . . .[it] should not specify the exact street number or, if applicable, unit number of a multi-dwelling, apartment, building or other structure." Id. If the offender resides in "a motel or other residence which may be identified by name, the name may be disclosed [in a Redacted Notice] but the particular unit or room number should be omitted." Id.

The New Guidelines mandate that only those individuals who are entitled to an Unredacted Notice and who sign a "receipt form" can receive the Unredacted Notice.2 The

_____

2. Briefly summarized, under the New Guidelines, when a registrant is classified as a Tier 2 offender, notices are "provided to school and community organization personnel so that they can take all appropriate

10

receipt form's language varies minimally depending on the recipient. See id. at 153–55. With respect to school principals and designated officials of community organizations, the recipient is informed "that the information in the notification form is to be treated as confidential and may be shared only with appropriate persons." App. at 153–54. By signing the form, the recipient agrees "to be bound by the terms of the Court Order which authorized the provision of notification . . . and. . . agree[s] to submit to the jurisdiction of the Court." Id. With respect to parents and other individuals in the community who receive the form for Tier 3 registrants, they similarly agree to: (1) "comply with the Order of the Court which allows me to receive the sex offender information"; (2)"comply with

_____

steps to protect those children and others under their supervision." App. at 109. For schools, the principal signs the receipt form and receives an Unredacted and a Redacted Notice. The principal can then share the Unredacted Notice with other personnel if he or she feels there is a particular need to do so and if that other individual also signs a receipt form. See id. at 113 (opining that "[t]he principal should share the notice with any person who in the course of the duties of his or her employment . . . is regularly in a position to observe unauthorized persons on or near the property of the notified school"). Alternatively, the principal can distribute the Redacted Notice without the need to have the receipt form signed. A similar procedure is set forth for community organizations beginning with a "designated official" signing the receipt form and receiving the Unredacted Notice. See  App. at 116–19.

When a registrant is classified as a Tier 3 offender, in addition to those individuals who are notified pursuant to Tier 2, notification is made "to community members and businesses within the court-authorized notification zone and to the parents and guardians of children attending schools located within the area in which the court ordered notification to the community." Id. at 119. Notification is made by "law enforcement hand-delivering the Notice . . . to an adult member of each household and to a full-time adult supervisory employee or owner in every business located in the area in the scope of notification." Id. at 120. If no one is available to receive the notice, a copy of an Attempted Delivery Form is left, instructing the person to contact the local law enforcement agency or County Prosecutor's Office. See id. Additionally, a Redacted Notice can be sent to all parents and guardians of students attending a school located in the court-authorized notification zone via regular United States mail. See id. at 122.

11

the Megan's Law Rules of Conduct"; and (3) "submit to the jurisdiction of the Court." Id. at 155. 3

Once the receipt form is signed, the individual receives the Unredacted Notice along with a copy of the court order and the "Rules of Conduct," which also vary somewhat depending on the recipient. See 145–48. With respect to school personnel, the Rules of Conduct state that the recipient cannot "share the information in this notification flier, or the flier itself, with anyone." Id. at 145.4 The Rules of Conduct for community organization recipients state that they are not allowed to share the information in the"flier, or the flier itself, with anyone outside of the community organization." Id. at 146. Finally, parents and legal guardians are told that they can share the information "with those residing in [their] household, such as family members," and "with anyone caring for [their] children at [their] residence in [their] absence." Id. at 147. They are not allowed, however, to share the information with anyone outside of the household or not in their care and, specifically, not "with the media." Id.  All of the Rules expressly warn that inappropriate conduct vis-a-vis the notices "may result in court action or prosecution being taken against you." Id. at 145–48.

If an individual refuses to sign a receipt form, he or she is still permitted to receive a Redacted Notice. Someone receiving a Redacted Notice is also warned that he or she, along with household members, is "bound to comply with the Megan's Law Rules of Conduct." Id. at 121.

_____

3. The court orders of ten of the twenty-one counties in New Jersey contained language warning that one who discloses sex offender information without authority to do so will be subject to penalties for contempt. On July 17, 2000, the state judges responsible for Megan's Law cases were advised that the Supreme Court of New Jersey did not approve the use of contempt of court language in court orders permitting notification and specifically instructed that such language not be included in those orders. See Letter from the Honorables David S. Baime, P.J.A.D., and Lawrence M. Lawson, A.J.S.C., to Megan's Law Judges, submitted under Fed. R. App. P. 28(j).

4. The Rules of Conduct note that "[l]aw enforcement will notify all appropriate community members, schools, organizations, residences and business." See, e.g., App. at 145.

12

Upon receipt of the New Guidelines, appellants moved to enforce the injunction issued on January 24, 2000. This time, however, appellants only raised two challenges. First, they argued "that the revised Guidelines are deficient because they do not require the issuance of a court order which would make the recipient of sex offender information subject to contempt of court sanctions for subsequent unauthorized disclosures." Paul P. v. Farmer , 92 F. Supp. 2d 410, 412 (D.N.J. 2000). Second, they argued "that a person's block of residence is constitutionally protected information which will be disseminated without any safeguards against its improper use in the `redacted' notices." Id.

The District Court rejected both arguments. First, noting that the adequacy of safeguards "is a flexible determination to be made based upon the facts of the particular case and the goals of the particular statute," the District Court determined that "the Attorney General has devised a reasonable method of distributing sex offender information to authorized persons, while avoiding disclosure to unauthorized persons." Id. at 413-14. Second, the District Court held that "[i]nformation concerning the general area in which a person lives is not information of an extremely personal or private nature. Nor is this information generally within a person's `reasonable expectations of confidentiality.' " Id. at 415. Thus, the District Court concluded that the New Guidelines adequately protect any private information from unauthorized disclosure and vacated its injunction against disseminating Megan's Law notices.[5]

Appellants filed this timely appeal.

II.

All that remains at issue in this case, after more than

_____

5. On April 18, 2000, we granted appellants' motion to stay the District Court's Order and, in doing so, reinstated the injunction which the District Court had stayed on January 24, 2000. On July 12, 2000, after hearing oral argument in this case, we vacated our stay, thus permitting the dissemination of notices to proceed under the New Guidelines.

13

three years of extensive litigation, is a single issue addressed to the Unredacted Notices and a single issue addressed to the Redacted Notices. Appellants initially argued, as to the Unredacted Notices, that the New Guidelines were inadequate as a matter of federal constitutional law because in ten counties the court orders which accompanied those notices did not contain contempt of court language and, thus, authorized individuals who received Megan's Law notices were not deterred from distributing the information to persons unauthorized to receive it. Subsequently, however, the Supreme Court of New Jersey rejected the use of contempt language in any notification order, see supra note 3, and appellants now appear to be arguing that because there is no longer a sanction, contempt or otherwise, they are inadequately protected from unauthorized disclosures of an offender's home address. We do not agree.

In Paul P. I, although we accepted appellants' claim "that there is some nontrivial interest in one's home address by persons who do not wish it disclosed," we made it clear that that interest must give way to the state's compelling interest in notifying the public "where prior sex offenders live so that susceptible individuals can be appropriately cautioned." 170 F.3d at 404; see also E.B. , 119 F.3d at 1104 (opining "that the state's interest here would suffice to justify the deprivation even if a fundamental right of the registrant's were implicated" in Megan's Law notifications). In evaluating whether the New Guidelines provide adequate safeguards, we cannot ignore this compelling state interest. Indeed, it is this very interest which places this case in a different posture than other cases in which we have been called upon to evaluate whether the safeguards in place were adequate to protect the privacy interest at stake.

In United States v. Westinghouse Elec. Corp., 638 F.2d 570 (3d Cir. 1980), and Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105 (3d Cir. 1987), for example, the disclosure sought was extremely limited and the interest which justified even that limited disclosure was narrow. In Westinghouse, the National Institute of Occupational Safety and Health ("NIOSH") sought Westinghouse's employees' medical records as part of its health hazard evaluation of

14

the Westinghouse plant. See 638 F.2d at 572. The information would not be shared with individuals outside of NIOSH, except perhaps outside contractors who were bound to nondisclosure by their contracts with NIOSH. See id. at 580. We recognized that NIOSH had an interest militating toward disclosure of the employees' private information, but only for this specific purpose. See id. at 579. Because the procedures for safekeeping the information protected this limited disclosure, we concluded that there were adequate safeguards in place. See id. at 580.

In Fraternal Order of Police, the Philadelphia Police Department sought information about certain applicants' medical history, financial status, and gambling and drinking habits. We found that there was a strong public interest in seeing that the Department obtain this information as it was sought not only for the purpose of selecting officers who were physically and mentally capable of working in dangerous and highly stressful positions, but to combat corruption among officers assigned to units which performed investigations in areas traditionally susceptible to corruption. See id. 812 F.2d at 116. However, this interest, at most, only justified disclosure for the narrow purpose of the application process and only to those officials within the Department responsible for the application process. See id. at 118. Because there was a "complete absence" of procedures limiting access to the private information and specifying its handling and storage, we determined that there were no adequate safeguards against unnecessary disclosure to the public. See id. at 118 (noting that "there is no statute or regulation that penalizes officials with confidential information from disclosing it").

In neither Westinghouse nor Fraternal Order of Police, therefore, was the articulated state interest or interests sufficient to justify public disclosure of the private information being collected. Consequently, there was a need for safeguards which adequately protected against unnecessary public disclosure.

Megan's Law's fundamental purpose, however, is public disclosure. The Law calls for the disclosure of sex offenders' information to numerous individuals in the general public

pursuant to the Attorney General's Guidelines and subject to the judicial review process provided by the New Jersey state courts. See supra note 2; see also Doe v. Poritz, 142 N.J. 1, 30 (1997) (requiring "judicial review of the Tier classification and the manner of notification prior to actual notification"). For example, with a Tier 3 offender, every parent of a child attending a school within the court-authorized notification zone is entitled to receive an Unredacted Notice. Appellants do not, nor could they, contest the necessity for such disclosures. See Paul P. I, 170 F.3d at 404, 406 (holding that appellants' privacy interest claim based on the disclosure of information to those who have a particular need for it must fail); see also Doe v. Poritz, 142 N.J. 1, 88 (1995) (addressing a challenge to the sex offender registration and notification laws and concluding that "the state interest in public disclosure substantially outweighs plaintiff's interest in privacy"). Moreover, within the Unredacted Notice, there is an abundance of information, e.g., name, date of birth, sex, and conviction, the disclosure of which does not implicate a privacy interest, and appellants do not argue that it does. See Paul P. I, 170 F.3d at 403.

In light of these authorized public disclosures, all that remains is the potential that a minimal burden, albeit a real one, will be placed on appellants' nontrivial privacy interest if there are subsequent, unauthorized disclosures with respect to a single piece of information, an offender's home address. Wholly aside from the fact that appellants do not suggest that, with adequate safeguards, the inclusion of home addresses in the Unredacted Notices would be inappropriate, the New Guidelines reasonably attempt to avoid any burden on appellants' privacy rights by requiring for the Unredacted Notices stringent delivery and notification procedures. See supra at 10-12. Moreover, the notification order itself and the accompanying Rules of Conduct rigorously stress the confidentiality of the information being provided, comprehensively explain how the information can and cannot be used, and firmly warn against unauthorized disclosures. Consequently, we agree with the District Court that "the Attorney General has devised a reasonable method of distributing sex offender information to authorized persons, while avoiding

16

disclosure to unauthorized persons." Paul P. , 92 F. Supp. 2d at 414. We further agree with the District Court that although contempt of court language may further reduce the number of unauthorized disclosures, a conclusion it reached even before the Supreme Court of New Jersey struck that language from the orders, the absence of such language does not render the New Guidelines unconstitutional. See id.

We, therefore, reject appellants' initial argument that uniform contempt language is required in the court orders which accompany the Unredacted Notices and their later argument that without a sanction such as contempt the safeguards are inadequate.6 Stated in positive terms, we find that, as a matter of federal constitutional law, appellants' privacy interest is adequately protected.

The single issue raised with respect to the Redacted Notices is this: the "governmental disclosure of one's street name, block of residence, and name of apartment building . . . breaks the veil of anonymity surrounding one's place of residence" and, thus, infringes upon appellants' privacy interest. Appellants Br. at 45. Again, we disagree.

Whatever privacy interest, if any, may exist in the area of one's residence, i.e., street name, block of residence, or name of apartment building, however, is substantially outweighed by the state's compelling interest in disclosing Megan's Law information to the relevant public, an interest recognized in Paul P. I, 170 F.3d at 404. Redacted Notices, it must be remembered, are not released willy-nilly to the general public. Rather, they are generally given only to individuals within the court-authorized notification zone, individuals who are otherwise authorized to receive an Unredacted Notice, but who do not sign a receipt form. Any burden imposed on appellants as a result of the identification of a quite specific area of residence, albeit not the precise home address itself, simply does not trump the state's interest in providing that information to authorized

_____

6. We recognize that the New Guidelines have only recently gone into effect because, as explained above, we only recently vacated the stay earlier ordered by this Court. If the safeguards prove to be inadequate, we do not preclude an application to the District Court for relief.

17

individuals within the court-authorized notification zone. Hence, we reject appellants' contention that the use of Redacted Notices infringes upon their privacy interest.

III.

We conclude that the New Guidelines adequately safeguard appellants' interest in assuring that information is disclosed only to those individuals who have a particular need for the information. Moreover, we find that including in the Redacted Notices information concerning appellants' area of residence does not unjustly infringe upon appellants' privacy interest. Accordingly, we will affirm the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18