

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2003

# A. A. v. State of NJ

Precedential or Non-Precedential: Precedential

Docket No. 01-4363P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"A. A. v. State of NJ" (2003). *2003 Decisions*. Paper 285.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/285

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-4363

_____

A. A.; A. B.; A. C., (a minor by M. M. his natural parent);
A. D.; A. E.; A. F.; A. G., (all fictitious initials),
individually and as representatives of a class, pursuant to
Fed. R. Civ. 23(a) and 23(b)(2)

v.

THE STATE OF NEW JERSEY; *JAMES McGREEVEY, in
his official capacity as Governor of the State of
New Jersey; ATTORNEY GENERAL OF THE STATE OF
NEW JERSEY, *PETER C. HARVEY, in his official
capacity; *JOSEPH R. FUENTES, in his official capacity as
Superintendent of New Jersey State Police

A. A., A. B., A. C., A. D., A. E., A. F., A. G.,
*Appellants*

*(Substituted pursuant to F.R.A.P. 43(c)).

_____

No. 01-4471

_____

A. A.; A. B.; A. C., (a minor by M. M. his natural parent);
A. D.; A. E.; A. F.; A. G., (all fictitious initials),
individually and as representatives of a class, pursuant to
Fed. R. Civ. 23(a) and 23(b)(2)

v.

THE STATE OF NEW JERSEY; *JAMES McGREEVEY, in his official capacity as Governor of the State of New Jersey; ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, *PETER C. HARVEY, in his official capacity; *JOSEPH R. FUENTES, in his official capacity as Superintendent of New Jersey State Police

The State of New Jersey, *James E. McGreevey, *Peter C. Harvey and *Joseph R. Fuentes,
*Appellants*

*(Substituted pursuant to F.R.A.P. 43(c)).

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-04804)
District Judge: Hon. Joseph E. Irenas

———————

Argued June 25, 2003

Before: SLOVITER, RENDELL, *Circuit Judges*,
and McCLURE,* *District Judge*

(Filed: August 18, 2003)

———————

Peter A. Garcia
 Acting Public Defender New Jersey
Michael Z. Buncher
Brian Neff
Office of Public Defender
Trenton, N.J. 08625

Edward L. Barocas (Argued)
American Civil Liberties Union of
 New Jersey Foundation
Newark, N.J. 07101

———

* Hon. James F. McClure, Jr., United States Senior District Judge for the Middle District of Pennsylvania, sitting by designation.

Lawrence S. Lustberg
Jessica A. Roth
Gibbons, Del Deo, Dolan, Griffinger
 & Vecchione
New York, N.Y. 10119

  Attorneys for Appellants in No. 01-
  4363 and Appellees in No. 01-
  4471

Peter C. Harvey
 Attorney General of New Jersey
 (acting)
David Samson
 Attorney General of New Jersey
Nancy Kaplen
 Assistant Attorney General of
 Counsel
B. Stephan Finkel (Argued)
 Assistant Attorney General
Rhonda S. Berliner-Gold
 Deputy Attorney General
Victoria L. Kuhn
 Deputy Attorney General on the
 Brief
Office of Attorney General of
 New Jersey
Department of Law & Public Safety
Trenton, N.J. 08625

  Attorneys for Appellants in No. 01-
  4471 and Appellees in No. 01-
  4363

## OPINION OF THE COURT

SLOVITER, *Circuit Judge.*

## I.

## INTRODUCTION

This appeal presents us with the latest in a long string of challenges to New Jersey's Megan's Law. This time, we

consider privacy claims as to the newest addition to the existing statutory regime — the creation of a public internet registry posting personal information about convicted sex offenders.

In 1994, seven year old Megan Kanka was abducted, raped, and murdered near her New Jersey home by a neighbor who had previously been convicted of sex offenses against young girls. Thereafter, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, title 17, § 170101, 108 Stat. 2038, as amended, 42 U.S.C. §14071, which conditions certain federal funds for law enforcement on the States' adoption of a Megan's Law, so named after Megan Kanka. By 1996, every State, the District of Columbia, and the Federal Government had passed a Megan's Law. While these laws vary from State to State, they generally require convicted sex offenders to register with law enforcement officials, who then notify community members of the registrants' whereabouts. New Jersey's Megan's Law has faced legal challenges every step of the way.

In *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235 (3d Cir. 1996), we upheld the registration provisions of New Jersey's Megan's Law in the face of ex post facto, double jeopardy, bill of attainder, due process, equal protection, and vagueness challenges. A year later in *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir. 1997), *cert. denied, sub nom. W.P. v. Verniero*, 522 U.S. 1109 (1998), we rejected claims that the law's notification requirements violated the Ex Post Facto and Double Jeopardy Clauses of the Constitution. Thereafter, we rejected claims that the notification requirement violated registrants' privacy rights in *Paul P. v. Verniero* ("*Paul P. I.*"), 170 F.3d 396 (3d Cir. 1999), and *Paul P. v. Farmer* ("*Paul P. II.*"), 227 F.3d 98 (3d Cir. 2000).

The story does not end there. In 1995, *Doe v. Poritz*, 662 A.2d 367 N.J. Sup. Ct. (1995), the New Jersey Supreme Court upheld the constitutionality of the original Megan's Law, conditioned on the implementation of certain safeguards. Specifically, the Court construed the notification provisions to require a "likely to encounter" standard based on geography and further required the

State to provide offenders with notice of their proposed scope of notification and an opportunity for judicial review before the notification was undertaken. *Id.* at 29-30. In light of the *Doe* Court's qualifications, New Jersey's electorate approved by public referendum in November 2000 an amendment to the New Jersey Constitution authorizing the legislature to enact new statutory provisions permitting the disclosure of sex offender registry information to the general public. N.J. Const. art. IV, § 7, ¶ 12. Thereafter, the New Jersey legislature passed a statute authorizing the creation of an internet registry which supplements the existing registration and notification system and contains information about certain high and moderate risk sex offenders. *See* N. J. Stat. Ann. §§ 2C:7-12 *et seq.* (2003) ("Registry").

## II.

## PROCEDURAL HISTORY

Appellants ("Registrants") are convicted sex offenders required to provide personal information to be placed on the Registry. They filed suit in the United District Court for the District of New Jersey challenging the constitutional amendment authorizing the creation of the Registry and the Registry itself. Specifically, the Registrants claimed that the Registry violated their rights under the Ex Post Facto and Double Jeopardy Clauses of the United States Constitution and their constitutional right to privacy in their home addresses and in the compilation of information posted on the Registry. Thereafter, they filed a motion for a preliminary injunction to prevent the State from implementing the Registry.

The District Court granted in part and denied in part the Registrants' motion for a preliminary injunction. *A.A. v. New Jersey*, 176 F. Supp. 2d 274 (D. N.J. 2001). Specifically, it denied their ex post facto, double jeopardy, and privacy claims as to the compilation of information. *Id.* at 297, 307. It concluded, however, that the Registrants had established a reasonable likelihood of success on the merits of their privacy claim as to their home addresses. *Id.*

at 307. The Registrants have appealed the District Court's denial of their ex post facto, double jeopardy, and privacy claims as to the compilation of information. The State cross-appealed from the District Court's injunction as to the Registrants' home addresses. We scheduled oral argument to hear the appeal and cross- appeal. After the Supreme Court granted certiorari in a Megan's Law case raising identical ex post facto claims — vis-a-vis Alaska's internet registry — we postponed argument. The Supreme Court has since spoken.

In *Smith v. Doe*, 123 S. Ct. 1140 (2003), the Court held that Alaska's internet registry is not punitive and thus its retroactive application does not violate the Ex Post Facto Clause.[1] The Registrants concede that the Supreme Court's decision in *Smith* effectively disposes of their ex post facto and double jeopardy claims, thereby leaving us to consider only claims as to their privacy interests. Although the Supreme Court in *Smith* was not presented with and did not discuss privacy issues as to Alaska's Registry, much of its discussion is nonetheless instructive and will be explored below.

## III.

## DISCUSSION

### A. Jurisdiction and Standard of Review

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1291 and 1292(a)(1). The District Court's determination as to the preliminary injunction "will be reversed only if the court abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof." *Loretangeli v. Critelli*, 853 F.2d 186, 193 (3d Cir. 1988). Nonetheless, we exercise plenary review over the District Court's conclusions of law

---

1. The same day *Smith* was rendered, the Supreme Court also issued its opinion in another Megan's Law case. In *Connecticut Dept. of Public Safety v. Doe*, 123 S. Ct. 1160 (2003), the Court upheld Connecticut's internet registry of convicted sex offenders against a procedural due process challenge.

and its application of the law to the facts. *Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 150-51 (3d Cir. 2001).

## B. Privacy Claims as to Registrants' Home Addresses

In its cross-appeal, New Jersey contends that the District Court erred in enjoining the State from posting on the internet information identifying the house or apartment number, street, zip code, and municipality of Registrants. Currently, the only geographic information available on the Registry is the Registrant's county of residence. The State contends that its compelling interest in making this information available through the internet to enhance public safety outweighs the Registrants' limited privacy interest in avoiding disclosure of their home addresses. The Registrants, on the other hand, urge us to uphold the District Court's partial preliminary injunction, arguing that "well-established precedent" has settled the issue as to their constitutionally-protected privacy interest in the confidentiality of their home addresses. For this proposition, they cite to *Paul P. I.* and *Paul P. II.*.

In *Paul P. I.*, plaintiffs were a class of registrants who challenged New Jersey's Megan's Law, claiming that the statutory requirement under the notification system requiring them to provide extensive information to law enforcement, including their home addresses, violated their constitutionally-protected right to privacy. 170 F.3d at 398. Under the challenged notification system, the information provided by the registrant was placed into a central registry available to law enforcement personnel but not to the public. *Id.* at 399. Thereafter, law enforcement officials used that information to determine the registrant's "risk of offense," assigning the registrant to one of three tiers which represented the registrant's risk of committing repeat sex offenses. *Id.* The tier assigned in turn determined which members of the community would receive the information.[2] *Id.*

Like the Registrants before us now, plaintiffs in *Paul P. I.*

---

2. Plaintiffs in *Paul P. I.* were Tier 2 and Tier 3 registrants. For purposes of our analysis in the current case, the absence of Tier 1 registrants in *Paul P. I.* is inconsequential.

claimed that their privacy interests were being violated by the dissemination of their homes addresses and in the compilation of personal information. *Id.* We considered their claims in light of our decision in *E.B.*, where we upheld the notification requirements of Megan's Law against double jeopardy and ex post facto challenges. *Paul P. I.*, 170 F.3d at 400-01. We further explored our own jurisprudence as to the type of information that may be protected from disclosure based on a privacy interest, and we concluded that even information that is entitled to privacy protection may be subject to disclosure if the government's interest in disclosing that information is compelling. *Id.* at 401-02.

While noting that there is some "nontrivial interest" in one's home address, we concluded that the State's interest in informing the public about the location of prior sex offenders and preventing sex offenses was compelling. *Id.* at 404. However, we remanded the case to the district court to consider the plaintiffs' subsequent motions detailing events causing "serious adverse consequences" to them and their families to assure that the information was being disclosed only to those individuals with a particular need for it. *Id.* at 406.

On remand, the district court held that the notification procedures were unconstitutional because they did not adequately safeguard against the unauthorized disclosure of protected information. *Paul P. v. Farmer*, 80 F. Supp. 2d 320, 325 (D. N.J. 2000). The district court directed the defendants to redraft the Attorney General's Guidelines to "reasonably limit disclosure to those entitled to receive it." *Id.* After receiving a copy of the revised Guidelines, the district court concluded that they adequately safeguarded plaintiffs' interests in assuring disclosure was made only to those with a particular need for it. *Paul P. v. Farmer*, 92 F. Supp. 2d 410, 414 (D. N.J. 2000). Plaintiffs appealed and we affirmed the district court's decision in *Paul P. II.*, 227 F.3d at 107. In so doing, we noted the precarious nature of our privacy inquiry as "this case begins with the understanding and, indeed, the requirement that what might otherwise be private information be made public." *Id.* at 99. In sum, "Megan's Law's fundamental purpose . . . *is* public disclosure." *Id.* at 106 (emphasis in original).

Before us, the Registrants argue that *Paul P. I.* and *Paul P. II.* settle our current privacy inquiry, going so far as to claim that we would have to reverse those decisions in order to find for the State. However, neither of those decisions states that the State cannot disclose the addresses of convicted sex offenders on the internet. Indeed, both of those decisions upheld the then applicable notification system of Megan's Law as against privacy claims by a group of convicted sex offenders. *See also Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1999) (holding that Constitution does not provide registrant right to keep his registry information private), *cert. denied*, 529 U.S. 1053 (2000); *Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997) (finding no privacy interest in the general vicinity of registrant's home address), *cert. denied sub nom. Stearns v. Gregoire*, 523 U.S. 1007 (1998).

Thus, neither *Paul P. I.* nor *Paul P. II.* is dispositive of the issue whether the State violates the Registrants' privacy rights by providing their home addresses on the internet. Admittedly, the Registry entails notification of a different dimension but our analytic approach here is the same. Our initial inquiry must be whether the information at issue is entitled to protection in the first place. To answer this question, we consider " 'whether it is within an individual's reasonable expectation[ ] of confidentiality.' " *Paul P. I.*, 170 F.3d at 401 (quoting *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112 (3d Cir. 1987)). If it is determined that the information is entitled to protection, we proceed to balance the privacy interest at stake with the State's interest in disclosure. *Id.* at 404. Thus, "[e]ven information that is entitled to privacy protection may nonetheless be subject to disclosure when the government's interest in disclosure is compelling." *Id.* at 402.

In *Paul P. I.*, we recognized "*some* nontrivial interest in one's home address by persons who do not wish it disclosed. . . ." *Id.* at 404 (emphasis in original). We nonetheless denied the registrants' privacy claims in that case after concluding that the State's interest in disclosure — namely, preventing sex offenses — was compelling. *Id.* The question of one's privacy interest in a home address was reconsidered in *Paul P. II.* There, we stated that

"[w]hatever privacy interest, if any, may exist in the area of one's residence . . . is substantially outweighed by the state's compelling interest in disclosing Megan's Law information to the relevant public. . . ." 227 F.3d at 107.

Viewing *Paul P. I.* and *Paul P. II.* in tandem, it is clear that a registrant's right to privacy in his or her home address gives way to the State's compelling interest to prevent sex offenses. Thus, we merely consider whether the addition of the Registry over Megan's Law's original notification scheme tips the balance back in favor of the Registrants. In other words, does the State's interest in using the internet as a vehicle to provide the public with notice of the whereabouts of convicted sex offenders outweigh the Registrants' "nontrivial" privacy interest in their home addresses.

The Registrants argue that by placing the information on the internet, the State is providing it to persons who do not have any particularized need for the information. The State responds that this argument ignores a fundamental characteristic of our modern society, that of mobility. We agree. The Registrants' argument ignores both the need to access information in a mobile society and the difference between the system of notification at issue here and that at issue in our prior opinions.

Under the original notification system, if the registrant's risk of re-offense is high, then persons "likely to encounter" the offender receive geographic information about the registrant. N. J. Stat. Ann. § 2C:7-8c(3). Those deemed "likely to encounter" are generally persons living in the direct vicinity of the registrant. The statute provides that the breadth of notification is generally left to the discretion of two county prosecutors, one from the county where the registrant was convicted and the other from the county where the registrant resides. N. J. Stat. Ann. § 2C:7-8d.

In contrast, the Registry is available on the internet to the general public. The New Jersey statute creating the Registry sets forth the basis for the law, explaining that "[t]he technology afforded by the Internet would make this information readily accessible to parents and private entities, enabling them to undertake appropriate remedial

precautions to prevent or avoid placing potential victims at risk." N. J. Stat. Ann. § 2C:7-12. New Jersey's stated interest in providing this information via the internet can be more fully understood through some examples the State provides in its brief.

Consider parents with young children who want to purchase a new home in New Jersey. Without the Registry, they would not be notified of the presence of convicted sex offenders, even those with a high risk of re-offense, until they had already purchased their new home which may be in the proximity of a Registrant's home. Under the original notification system, the parents have no ability to obtain this information. So, too, a family planning a vacation at the New Jersey Shore. Without the listing of geographic information on the Registry, the family could not obtain information as to the location of convicted sex offenders in the area.

It is apparent that these families have no less need for the same geographic information currently made available to those individuals deemed "likely to encounter" the sex offenders under the original notification system. Thus, we cannot say that New Jersey does not have an equally compelling interest in protecting these persons as it does in protecting those persons covered by the existing Megan's Law notification system. Indeed, discovering this information after the fact undermines the stated goal of New Jersey, which is to enable parents to "*prevent or avoid* placing potential victims at risk." N. J. Stat. Ann. § 2C:7-12 (emphasis added).[3]

---

3. It should be noted that New Jersey has incorporated various safeguards to protect against misuse of the information available on the Registry. For instance, the Act directs the Attorney General to "[e]nsure that the Internet registry contains warnings that any person who uses the information contained therein to threaten, intimidate or harass another, or who otherwise misuses that information may be criminally prosecuted. . . ." N.J. Stat. Ann. § 2C:7-14. The Warnings are clearly posted on the Registry and appear before a person may see any information contained in the Registry. The Act also provides for further criminal penalties for anyone who uses the information to commit a crime and also largely prohibits the use of information available on the

Thus, notwithstanding the nontrivial interest in one's home address previously recognized in *Paul P. I.*, we conclude that whatever privacy interest the Registrants have in their home addresses is substantially outweighed by the State's interest in expanding the reach of its notification to protect additional members of the public. In so concluding, we bear in mind the recent decision of the United States Supreme Court in *Smith v. Doe*, 123 S. Ct. 1140 (2003). Although the issue presented in *Smith* was whether Alaska's internet registry was an impermissible ex post facto statute and the registrants did not raise any privacy claims, the *Smith* Court's views as to disclosure of Megan's Law information via the internet were made abundantly clear. In rejecting the registrants' argument that posting their information on the internet constituted punishment, the Court stated:

> The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

123 S. Ct. at 1150.

The Court further shifted the blame for any negative consequence to the registrants themselves, noting that:

> Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the

---

Registry "for the purpose of applying for, obtaining . . . : (1) Health insurance; (2) Insurance; (3) Loans; (4) Credit; (5) Education, scholarships, or fellowships; (6) Benefits, privileges, or services provided by any business establishment, unless for a purpose consistent with the enhancement of public safety; or (7) Housing or accommodations." N.J. Stat. Ann. § 2C:7-16

public can take the precautions they deem necessary before dealing with the registrant.

*Id.* at 1151. Furthermore, the *Smith* Court noted that:

The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for Alaska's citizenry.

*Id.*

Informed by the Supreme Court's analysis in the *Smith* decision, we conclude that New Jersey may permissibly use the Registry as a "more efficient, cost effective, and convenient" avenue to provide its citizens with needed information.

The *Smith* decision was issued after the District Court's order granting a preliminary injunction based on our earlier decisions and thus the District Court did not have the benefit of the Supreme Court's view. We believe it is likely that had it been available, it would have altered the balance.

## C. Privacy Claims as to Compilation of Information

We next consider the Registrants' argument that they have established a reasonable likelihood of success on the merits of their claim that the Registry violates their right to privacy in the compilation of information. According to the Registrants, the State violates their privacy rights when it compiles information such as their names, ages, race, birth dates, height, weight, and hair color. In other words, when the State gathers in one place information that is otherwise public — yet scattered — the compiled unit becomes entitled to a constitutional right to privacy. We have never recognized such a privacy right, the District Court rejected it, and the Registrants have not provided us with a persuasive reason to do so now.

When presented with a similar compilation argument in *Paul P. I.*, we stated that "[b]ecause we find the government's interest in preventing sex offenses compelling,

we need not decide whether the degree of effort needed to assemble otherwise available but dispersed information ought to be considered as a factor in determining the reasonableness of an individual's expectation of privacy in the compiled data." 170 F.3d at 404.

That reasoning is equally applicable here. We conclude that the State's compelling interest in preventing sex offenses substantially outweighs any interest the Registrants may have in not having public — yet scattered — information compiled.

## IV.

## CONCLUSION

For the reasons set forth above, we will affirm the District Court's denial of the Registrants' motion for a preliminary injunction as to the compilation of information in the Registry. Furthermore, we will remand to the District Court with instructions to dissolve the preliminary injunction as to the Registrants' home addresses. The mandate shall issue forthwith.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*