SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Registrant R.S. (A-23-23) (088761)**

**Argued May 1, 2024 -- Decided July 2, 2024**

**FASCIALE, J., writing for a unanimous Court.**

In this appeal, the Court addresses two legal questions: (1) when is a Megan's Law registrant who faces internet publication under N.J.S.A. 2C:7-13(b)(2) entitled to an evidentiary hearing to challenge the State's proofs that the registrant's conduct established a pattern of compulsiveness and repetitiveness; and (2) whether, to establish that the registrant's conduct constituted a pattern of compulsiveness and repetitiveness, the State may rely on a psychological report that had been prepared for sentencing purposes under N.J.S.A. 2C:47-3, for which the burden of proof is by a preponderance of the evidence, given that "Tier" classification determinations require clear and convincing evidence.

In July 2016, then fourteen-year-old A.W. reported to police that her grandfather, petitioner R.S., had sexually molested her for two years. R.S. later admitted that he had touched his daughter in a similar manner when she was a minor. R.S. was charged with one count of second-degree sexual assault against A.W. He pled guilty as charged and underwent a psychological examination to determine whether he should serve his sentence at the Adult Diagnostic Treatment Center at Avenel (Avenel) pursuant to N.J.S.A. 2C:47-3. The Avenel evaluator prepared a 2017 report and concluded that "[R.S.'s] repetitive criminal sexual behavior was performed compulsively," and that R.S. was amenable and willing to participate in sex offender treatment. The judge sentenced R.S. to four years at Avenel.

In June 2022, the Camden County Prosecutor's Office notified R.S. that it would seek Tier Two (moderate risk of reoffense) classification and community notification with additional internet publication. Through counsel, R.S. challenged two aspects of the State's proposal. Pertinent to this appeal, R.S. argued he was never found to have engaged in "repetitive and compulsive" behavior by clear and convincing evidence as required for inclusion on the internet registry.

At the August 2022 Tier classification hearing, the assistant prosecutor requested that the Megan's Law judge find by clear and convincing evidence that R.S.'s conduct was characterized by a pattern of repetitive and compulsive behavior.

1

In response, the judge explained that R.S. "certainly would not have been eligible to serve his sentence at [Avenel] if he was not found to be repetitive and compulsive" and stated that she was "satisfied clearly and convincingly that [R.S.] is repetitive and compulsive." The Megan's Law judge ordered Tier Two community notification, including internet publication. The Appellate Division affirmed that portion of the judgment, determining that the Megan's Law judge correctly found, based on clear and convincing evidence, that R.S.'s conduct was compulsive and repetitive. The Court granted certification. 256 N.J. 349 (2024).

**HELD:** Under N.J.S.A. 2C:7-13(b)(2), a Megan's Law registrant is entitled to an evidentiary hearing if the registrant demonstrates that there exists a genuine issue of material fact about whether the registrant's conduct is characterized by a pattern of repetitive and compulsive behavior. The State may rely on an earlier psychological report that had been prepared pursuant to N.J.S.A. 2C:47-3, but the independent findings by a Megan's Law judge as to compulsivity and repetitiveness must be based on clear and convincing evidence.

1. The Court reviews the history of Megan's Law and the registration requirements for which it provides, including the 2000 amendment to the New Jersey Constitution pursuant to which the Legislature amended Megan's Law to authorize internet publication of certain sex offenders' information. Through a 2014 amendment, the Legislature broadened the reach of internet publication. Under that amendment, codified at N.J.S.A. 2C:7-13(b)(2), an offender with a low or moderate re-offense risk will be placed on the internet registry if the underlying sex offense was found to be repetitive and compulsive pursuant to N.J.S.A. 2C:47-3. N.J.S.A. 2C:47-3 permits a sentencing judge to impose a term of incarceration to be served at Avenel, rather than in state prison, if first, a psychological examination of the offender "reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior" and second, the sentencing judge likewise finds "the offender's conduct was so characterized" and also that the offender is both amenable to and willing to participate in treatment. At the sentencing stage, such findings are made by a preponderance of the evidence. (pp. 13-19)

2. In L.A. v. Hoffman, 144 F. Supp. 3d 649 (D.N.J. 2015), two convicted sex offenders filed a class action lawsuit challenging the 2014 Megan's Law amendment mandating that certain sex offenders' information -- i.e., those with a low or moderate risk of reoffending whose conduct was found to be repetitive and compulsive -- be published on the sex offender internet registry. The Hoffman parties settled the case, and the district court entered a Consent Order in March 2017 memorializing the agreement. Pursuant to that Consent Order, a registrant's information cannot be included on the internet registry unless the State "establishes by clear and convincing evidence that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior." The Administrative Office of the Courts

2

subsequently directed that "the determination to include certain sex offenders on the Internet Registry in accordance with the [Hoffman Consent Order], will be decided by Megan's Law judges upon completion of their tier classification and community notification hearing, and not at the time of sentencing." (pp. 19-23)

3. Recognizing that the parties agree they are bound by the Hoffman Consent Order, the Court holds that under N.J.S.A. 2C:7-13(b)(2), a Megan's Law registrant is entitled to an evidentiary hearing if the registrant demonstrates there exists a genuine issue of material fact about whether the registrant's conduct at the time the underlying sex offense was committed was compulsive and repetitive. The Court furthers hold that, for Tier classification purposes, the State may rely on a psychological report prepared earlier pursuant to N.J.S.A. 2C:47-3. However, the independent findings by a Megan's Law judge as to compulsivity and repetitiveness must be made based on clear and convincing evidence. When the State relies upon an Avenel report to meet its burden by clear and convincing evidence, the registrant is not automatically entitled to cross-examine the expert who authored the report. Registrants who wish not to introduce their own evidence but only to cross-examine an Avenel expert must point to a genuine issue of material fact with the expert's report. Once that prerequisite showing has been made, the Megan's Law judge has discretion over the scope of the limited evidentiary hearing. And whether an Avenel report alone provides clear and convincing evidence that a registrant's conduct was repetitive and compulsive is to be determined on a case-by-case basis by the Megan's Law judge. But the Megan's Law judge may not rely simply on the Avenel expert's conclusion in the report to support a finding that the registrant's conduct was compulsive and repetitive; instead, the judge must identify aspects of the report on the record that support the judge's independent findings and conclusions. See R. 1:7-4(a). (pp. 23-28)

4. Here, the Megan's Law judge appears to have relied primarily on the 2017 Avenel report's conclusion that R.S.'s behavior was in fact repetitive and compulsive. The Court remands to resolve whether an evidentiary hearing is warranted and, irrespective of that determination, to allow the Megan's Law judge to make additional findings and conclusions in accordance with Rule 1:7-4(a). The judge may continue to rely on the 2017 Avenel report when making independent findings and conclusions regarding R.S.'s conduct but must identify aspects of the report on the record that support those independent findings and conclusions as to whether R.S. was clearly and convincingly repetitive and compulsive. (pp. 28-29)

**The judgment of the Appellate Division is VACATED as to the single issue before the Court. The matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-23 September Term 2023

088761

In the Matter of
Registrant R.S.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| May 1, 2024 | July 2, 2024 |

Fletcher C. Duddy, Assistant Public Defender, argued the cause for appellant R.S. (Jennifer N. Sellitti, Public Defender, attorney; Fletcher C. Duddy and John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs, and Alexander W. Geisel, Legal Fellow, on the briefs).

Kevin J. Hein, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Grace C. MacAulay, Camden County Prosecutor, attorney; Kevin J. Hein, of counsel and on the briefs, and Matthew T. Spence, Assistant Prosecutor, on the briefs).

Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Leslie-Ann M. Justus, of counsel and on the brief).

Jalen D. Porter argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Jalen D. Porter and Raymond M. Brown, on the brief).

Julia Bradley argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Gibbons and American Civil Liberties Union of New Jersey Foundation, attorneys; Julia Bradley, Lawrence S. Lustberg, Alexander Shalom, and Jeanne LoCicero, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

A 2014 amendment to the Registration and Community Notification Laws, collectively known as "Megan's Law," requires that certain sex offenders be placed on the New Jersey Sex Offender Internet Registry, including those "whose risk of re-offense is moderate or low and whose conduct was found to be characterized by a pattern of repetitive, compulsive behavior pursuant to the provisions of N.J.S.A. 2C:47-3." L. 2013, c. 214 § 2 (codified at N.J.S.A. 2C:7-13(b)(2)) (effective July 1, 2014).

For Megan's Law registrants facing internet publication under N.J.S.A. 2C:7-13(b)(2), the parties agree the State must prove by clear and convincing evidence that the registrant's conduct was repetitive and compulsive. They agree further that those registrants may challenge the State's proofs. For those positions, the parties rely on a Consent Order entered in L.A. v. Hoffman, 144 F. Supp. 3d 649 (D.N.J. 2015).

In this appeal, we address two legal questions: (1) when is a Megan's Law registrant who faces internet publication under N.J.S.A. 2C:7-13(b)(2)

2

entitled to an evidentiary hearing to challenge the State's proofs that the registrant's conduct established a pattern of compulsiveness and repetitiveness; and (2) whether, to establish that the registrant's conduct constituted a pattern of compulsiveness and repetitiveness, the State may rely on a psychological report that had been prepared for sentencing purposes under N.J.S.A. 2C:47-3, for which the burden of proof is by a preponderance of the evidence, given that "Tier" classification determinations require clear and convincing evidence.

Recognizing that the parties agree they are bound by the Hoffman Consent Order, we hold that under N.J.S.A. 2C:7-13(b)(2), a Megan's Law registrant is entitled to an evidentiary hearing if the registrant demonstrates that there exists a genuine issue of material fact about whether the registrant's conduct is characterized by a pattern of repetitive and compulsive behavior. We further hold that the State may rely on an earlier psychological report that had been prepared pursuant to N.J.S.A. 2C:47-3, but we emphasize that the independent findings by a Megan's Law judge as to compulsivity and repetitiveness must be based on clear and convincing evidence.

Here, the record must be more fully developed (1) to address whether an evidentiary hearing is warranted and (2) for the Megan's Law judge to make further findings and conclusions. We therefore remand for further proceedings

consistent with this opinion. Internet publication remains stayed pending remand.

## I.

## A.

In July 2016, then fourteen-year-old A.W. reported to police that her grandfather, petitioner R.S., had sexually molested her for two years.[1] A detective report summarized A.W.'s statements to the police as follows:

> [A.W.] disclosed that [R.S.] would come into her room in the morning around 7:00 AM and would massage her body. [A.W.] would pretend to be sleeping. [R.S.] would touch her breast underneath her shirt with his hand and would squeeze her breast. [A.W.] further stated that [R.S.] would touch her vagina over her underwear. She said that this has occurred for two years on a daily basis, including this morning.

A.W.'s mother then telephoned R.S. and allowed detectives to listen to the conversation. On that call, R.S. apologized for touching A.W. in the manner A.W. had reported. The police then conducted a recorded interview of R.S. during which he admitted to touching A.W. in the mornings before he went to work for the past two years, including that very morning.[2]

---

[1] We refer to the individuals involved in this appeal by initials to protect their privacy. See R. 1:38-3(c)(9).

[2] R.S. further admitted that he had touched his daughter in a similar manner when she was a minor. Although R.S.'s daughter later confirmed to police that

4

R.S. was charged with one count of second-degree sexual assault against A.W., in violation of N.J.S.A. 2C:14-2(b). R.S. pled guilty as charged and underwent a psychological examination to determine whether he should serve his sentence at the Adult Diagnostic Treatment Center at Avenel (Avenel) pursuant to N.J.S.A. 2C:47-3. The Avenel evaluator prepared a 2017 report and concluded that "[R.S.'s] repetitive criminal sexual behavior was performed compulsively," and that he was amenable and willing to participate in sex offender treatment. Consequently, the judge sentenced R.S. to four years at Avenel. See N.J.S.A. 2C:47-3(b) (providing that if a court finds that a sex "offender's conduct was characterized by a pattern of repetitive, compulsive behavior and that the offender is amenable to sex offender treatment and is willing to participate in such treatment, the court shall" sentence the defendant to Avenel); State v. Howard, 110 N.J. 113, 126-27, 131 (1988) (applying a preponderance of the evidence standard to a finding under N.J.S.A. 2C:47-3(a)).

Before he was released from Avenel, R.S. underwent a second psychological evaluation in July 2019, in which the evaluator noted R.S.'s satisfactory progress and release plans. Indeed, using the "STATIC-99R"

her father had repeatedly sexually assaulted her between the ages of twelve and fourteen, the statute of limitations barred prosecution for R.S.'s offenses against his daughter.

scale, R.S.'s low score suggested he had a "very low" risk of reoffending. Nevertheless, the July 2019 report recommended continued treatment upon release and that R.S. have "no unsupervised contact with female children." Avenel released him in December 2019.

B.

In June 2022, the Camden County Prosecutor's Office notified R.S. that his Registrant Risk Assessment Scale (RRAS) score was forty-one, which reflected a moderate risk of reoffending, and that it would therefore seek Tier Two classification and community notification with additional internet publication. The "Megan's Law Statement of Reasons" attached to the notice stated in part that

> [t]he State seeks internet notification. The State seeks notification to schools and community groups at the high and middle school levels. Normally [R.S.] would qualify for the incest exception [to internet notification] however due to his status as repetitive and compulsive AND the fact he has multiple victims overcomes the presumption against internet publication.

In addition to providing R.S. with the day, time, and location of his Megan's Law Tier classification hearing, the notice informed R.S. that he may object to the proposed classification. The notice detailed the procedures for doing so, which included the submission of an "Application for Judicial Review" form.

6

Through counsel, R.S. challenged two aspects of the State's proposal. First, R.S. argued his RRAS score should be reduced to thirty-six points, relegating him to Tier One "low risk," because he did not use "force" as outlined in the RRAS's first factor. Second, and pertinent to this appeal, R.S. argued he was never found to have engaged in "repetitive and compulsive" behavior by clear and convincing evidence as required for inclusion on the internet registry. Relying on the Hoffman Consent Order, R.S. asserted that "while an offender's repetitive and compulsive conduct need only be proven by a preponderance of the evidence for sentencing to [Avenel]," the standard is clear and convincing at a Tier classification hearing when the State seeks to include an offender on the internet registry. R.S.'s counsel stated that if the Megan's Law judge finds R.S.'s conduct to be clearly and convincingly repetitive and compulsive, then R.S. would be requesting an adjournment "for an updated psychosexual evaluation speaking to his repetitive and compulsive designation."

At the August 2022 Tier classification hearing -- the only hearing conducted by the Megan's Law judge in this case -- R.S. again objected to his RRAS score. The judge rejected R.S.'s argument that factor one (dealing with force) should be low risk and instead found him to be moderate risk. She calculated R.S.'s RRAS score as forty-one.

7

The assistant prosecutor then requested that the Megan's Law judge find by clear and convincing evidence that R.S.'s conduct be characterized by a pattern of repetitive and compulsive behavior. In response, the judge explained that

> there was a finding from the Avenel report that I did review . . . that he was eligible for sentencing under the . . . sex offender statute . . . . It was Avenel who made the finding that h[is] [conduct] was repetitive and compulsive . . . . In fact, he served his sentenc[e] at [Avenel]. . . . He certainly would not have been eligible to serve his sentence at [Avenel] if he was not found to be repetitive and compulsive.

The judge elaborated that she reviewed the police reports and "the Avenel report" and was "satisfied clearly and convincingly that [R.S.] is repetitive and compulsive." R.S.'s counsel moved to stay the Tier Two notification, including internet publication, and essentially argued that the State failed to meet its burden of proof. R.S.'s counsel reiterated his request for an evidentiary hearing to challenge the State's proofs that R.S.'s conduct could be characterized, clearly and convincingly, by a pattern of repetitive and compulsive behavior.

The Megan's Law judge ordered Tier Two community notification, including internet publication, but granted R.S.'s request for a stay to allow R.S. to either obtain a new psychological examination of his own and move for reconsideration or file an appeal. R.S. decided to appeal, and the Megan's

Law judge thereafter entered a second stay of the imposition of the Tier Two notification requirements, including internet publication, pending disposition of the appeal.

C.

The Appellate Division affirmed in part and reversed in part. The appellate court upheld internet publication, determining that the Megan's Law judge correctly found, based on clear and convincing evidence, that R.S.'s conduct was compulsive and repetitive. It concluded that the Megan's Law judge "engaged in an independent assessment" regarding the characterization of R.S.'s conduct and further noted that she relied on "all the other information" provided at the hearing in addition to the "unrebutted" 2017 Avenel report.[3] Although the Appellate Division agreed that R.S. should be placed on the sex offender internet registry, it nevertheless reversed in part, remanded, and directed that the Megan's Law judge classify R.S. "as a Tier One low-risk offender with a score of thirty-six."[4]

---

[3] The August 2022 Tier hearing transcript reveals the "other information" included police reports and witness statements.

[4] The State did not cross-appeal from the Appellate Division's judgment directing that the Megan's Law judge classify R.S. as a Tier One, low-risk reoffender. That issue is therefore not before us, but we note that under N.J.S.A. 2C:7-13(b)(2), low-risk reoffenders whose conduct was repetitive and compulsive are also subject to internet publication.

D.

We granted R.S.'s petition for certification, 256 N.J. 349 (2024), and stayed publication on the internet registry pending appeal. We granted leave to the American Civil Liberties Union of New Jersey (ACLU), the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Attorney General, to participate as amici curiae.

II.

A.

R.S. relies on the Hoffman Consent Order. He contends that he is entitled to "an adversarial evidentiary hearing" to challenge the State's proofs that his conduct could be characterized by a pattern of repetitiveness and compulsiveness. He argues that a registrant is entitled to such a hearing upon making "specific arguments . . . challeng[ing] the finding of a previous [Avenel] report."

R.S. further submits that a Megan's Law judge cannot solely rely "on the sentencing court's previous 'repetitive and compulsive' finding, made by a preponderance of the evidence." On that point, R.S. emphasizes that the Megan's Law judge failed to "analyze any of the underlying information and reasoning" in his 2017 Avenel report before finding R.S. was clearly and convincingly repetitive and compulsive. He argues that a registrant is

10

presumptively entitled to cross-examine the Avenel expert and may "always" challenge a compulsive and repetitive designation by marshalling "expert or documentary evidence," including evidence of subsequent therapeutic treatment.

The ACLU supports R.S.'s arguments. Comparing the lower preponderance of the evidence burden of proof at sentencing to the higher clear and convincing standard at a Megan's Law Tier classification hearing, the ACLU argues that when the State has a higher standard of proof at a Tier classification hearing, a registrant should be afforded a "full and fair opportunity to test the State's proofs" by cross-examining or marshalling their own evidence. The ACLU cites to other court proceedings where a judge permits additional evidence "to achieve the level of accuracy that the relevant standard of proof demands."

The ACDL likewise supports R.S.'s position and argues that R.S. is entitled to a full evidentiary hearing. The ACDL discusses the various types of relevant evidence that should be considered at a Megan's Law Tier classification hearing and emphasizes that an Avenel report created for sentencing purposes "cannot alone be dispositive evidence" of a registrant's repetitive and compulsive conduct at the later Tier hearing. To allow

11

otherwise, the ACDL argues, would "erroneously" place registrants on the internet registry.

B.

The State agrees that a Megan's Law registrant facing a repetitive and compulsive determination is entitled to "marshal evidence to rebut the State's" proofs at the Tier classification hearing. According to the State, R.S. failed to challenge the 2017 Avenel report's "material facts or conclusions." Had he done so, the State concedes that "cross-examination and other evidence challenging the State's submission [would be] expected" at the Tier classification hearing.

The State contends that evidence of a low STATIC-99R score and subsequent therapeutic treatment speak to a registrant's mindset after the fact, but that N.J.S.A. 2C:7-13(b)(2) focuses on the registrant's mindset when they committed the underlying sex offense. Furthermore, the State recognizes that under the Consent Order in <u>Hoffman</u>, it has the burden of proving the registrant's conduct was repetitive and compulsive by clear and convincing evidence. It submits however that it is possible for an initial Avenel report to meet that standard.

The Attorney General generally supports the State's position. The Attorney General agrees that under the Consent Order in <u>Hoffman</u> and other

12

Megan's Law case precedent, the State must justify its proposed Tier classification, including if it seeks internet publication, based on clear and convincing evidence. Furthermore, the Attorney General does not dispute that a registrant may be entitled to an evidentiary hearing. To warrant such a hearing, the Attorney General asserts that the registrant must "interpose[] objections sufficient to raise genuine issues of material fact" challenging that the registrant's conduct "was clearly and convincingly repetitive and compulsive." The Attorney General argues that R.S. failed to raise a genuine issue regarding whether his conduct was repetitive and compulsive and, thus, an evidentiary hearing was unwarranted.

### III.

### A.

Following "the abduction, rape, and murder of seven-year-old Megan Kanka by her neighbor," who unbeknownst to Megan's family was a convicted sex offender, In re Registrant H.D., 241 N.J. 412, 419 (2020), the New Jersey Legislature enacted Megan's Law in 1994, L. 1994, c. 133 (originally codified at N.J.S.A. 2C:7-1 to -11). The Legislature declared that "[t]he danger of recidivism posed by sex offenders" requires certain sex offenders to register with law enforcement officials. N.J.S.A. 2C:7-1(a). The registration system allows law enforcement "to identify and alert the public when necessary for

13

the public safety" in addition to providing law enforcement "with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." Id. at -1(a), (b). Megan's Law delegates responsibility for implementing the registration and notification systems to various governmental institutions, including to the Attorney General and the Administrative Office of the Courts. See, e.g., id. at -3(2).

In furtherance of its legislative purposes, Megan's Law has two core components: (1) law enforcement registration and (2) community notification. In re Registrant M.F., 169 N.J. 45, 52 (2001). The latter component requires law enforcement to "provide notification of [an] inmate's release to the community" where the inmate intends to live. In re N.B., 222 N.J. 87, 95 (2015); N.J.S.A. 2C:7-6.

Megan's Law uses a risk-based "Tier" notification system where the degree of community notification depends on how likely a sex offender is to reoffend. N.J.S.A. 2C:7-8(c). N.J.S.A. 2C:7-8(a) requires that the Attorney General "promulgate guidelines and procedures for the notification" system. The regulations are to "provide for three levels of notification depending upon the risk of re-offense": Tier Three (high risk) reoffender; Tier Two (moderate risk) reoffender; and Tier One (low risk) reoffender. Id. at -8(c)(1), (2), (3). When a registrant's "risk of re-offense is low [(Tier One)], law enforcement

14

agencies likely to encounter the person registered shall be notified," id. at -8(c)(1), but when the re-offense risk is moderate (Tier Two), "organizations in the community are also notified," N.B., 222 N.J. at 95 (emphasis added) (citing N.J.S.A. 2C:7-8(c)(2)).  When a registrant's "risk of re-offense is high [(Tier Three)], notification is also given to members of the public who are likely to encounter the registrant."  Ibid. (emphasis added) (citing N.J.S.A. 2C:7-8(c)(3)).[5]

Moreover, the statute explicitly requires the Attorney General to "develop procedures for evaluation of the risk of re-offense and implementation of community notification," which must, at a minimum, require that the county prosecutor where the offender was convicted and the county prosecutor where the offender now lives assess the registrant's re-offense risk together.  N.J.S.A. 2C:7-8(d).  The Attorney General Guidelines mandate that an offender on parole or probation be notified "of their duty to register and that, upon registration, they will be subject to a determination by the Prosecutor's Office as to which tier is appropriate in their circumstances,

---

[5]  The Attorney General Guidelines contain the RRAS, which is used to assess a sex offender's re-offense risk.  N.B., 222 N.J. at 95 n.3.  An RRAS score is calculated by weighing several risk assessment criteria.  Ibid.  "An RRAS score of 0 to 36 is low risk; 37 to 73 moderate risk; and 74 or more, high risk."  In re T.T., 188 N.J. 321, 329 (2006) (citing Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws).

15

based upon an assessment of a risk of re-offense." Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws 8 (Attorney General Guidelines) (rev. Feb. 2007), https://www.nj.gov/oag/dcj/megan/ meganguidelines-2-07.pdf. In addition to outlining the procedures for a registrant's Tier classification hearing where the State must prove that its proposed Tier designation and community notification are appropriate, the guidelines require that "[a]ll tier and scope of notification determinations made by the court . . . be embodied in the court order, including posting on the Internet Registry."[6] Id. at 24, 28.

As technology advanced, so did the community notification requirements under Megan's Law. A 2000 amendment to the New Jersey Constitution empowered the Legislature "[n]otwithstanding any other provision of this Constitution and irrespective of any right or interest in maintaining confidentiality," to enact laws to "authorize . . . disclosure to the general

---

[6] In addition to the Attorney General Guidelines, this Court's "Outline of Procedures for Megan's Law Cases" likewise provides procedural rules for Megan's Law Tier classification hearings. Outline of Procedures for Megan's Law Cases (rev. Mar. 31, 2009). Recognizing that the Megan's Law scheme is complex and comprised of multiple authorities, our opinion today does not disrupt the way Megan's Law judges have been conducting Tier classification proceedings. Indeed, Megan's Law judges have generally been following the standard we have outlined today. We anticipate that will continue and intend our holding to be harmonious with current practices.

16

public of information pertaining to the identity, specific and general whereabouts, physical characteristics and criminal history of persons found to have committed a sex offense." N.J. Const. art. IV, § 7, ¶ 12 (effective Dec. 7, 2000). Pursuant to the constitutional amendment, the Legislature amended Megan's Law in 2001 to authorize internet publication of certain sex offenders' information. L. 2001, c. 167 (codified at N.J.S.A. 2C:7-12 to -19). In addition to creating the New Jersey Sex Offender Internet Registry, the Megan's Law amendment mandates that "information in the State registry about certain sex offenders [be] publicly available on the internet." N.B., 222 N.J. at 95-96; N.J.S.A. 2C:7-12. As originally enacted, only those sex offenders whose risk of re-offense was high or whose risk of re-offense was moderate but did not fall within a statutory exemption were placed on the internet registry. L. 2001, c. 167 § 2 (codified at N.J.S.A. 2C:7-13(b), (d)).

Through a 2014 amendment, however, the Legislature broadened the reach of internet publication. See L. 2013, c. 214 § 2 (codified at N.J.S.A. 2C:7-13(b)(2)). That 2014 Amendment, which is central to this appeal, provides that

> [t]he public may, without limitation, obtain access to the Internet registry to view an individual registration record, any part of, or the entire Internet registry concerning all offenders . . . whose risk of re-offense is moderate or low and whose conduct was found to be characterized by a pattern of repetitive, compulsive

17

behavior pursuant to the provisions of N.J.S.A. 2C:47-3.

[N.J.S.A. 2C:7-13(b)(2).]

Thus, an offender with a low or moderate re-offense risk will be placed on the internet registry if the underlying sex offense was found to be repetitive and compulsive pursuant to N.J.S.A. 2C:47-3. Ibid.

N.J.S.A. 2C:47-3 is a "provision[] of the Code of Criminal Justice relating to sex offenders" that "empower[s] the sentencing court to impose a sentence at Avenel." Howard, 110 N.J. at 126 (emphasis added). After a conviction of certain sex crimes, N.J.S.A. 2C:47-3 permits a sentencing judge to impose a term of incarceration to be served at Avenel, rather than in state prison, if first, a psychological examination of the offender "reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior" and second, the sentencing judge likewise finds "the offender's conduct was so characterized" and also that the offender is both amenable to and willing to participate in treatment. N.J.S.A. 2C:47-3(a), (b) (emphasis added). At the sentencing stage, such findings are made by a preponderance of the evidence. Howard, 110 N.J. at 126-27, 131. An Avenel report that concludes an offender's conduct was repetitive and compulsive plays a major role in determining whether the offender should be sentenced to Avenel for treatment. See N.J.S.A. 2C:47-1 to -3.

18

Megan's Law and the statutory scheme dealing with alternative sentencing for sex offenders use the same "repetitive and compulsive" language.  Compare N.J.S.A. 2C:7-13(b)(2), with N.J.S.A. 2C:47-3.  In fact, Megan's Law specifically applies to those "whose conduct was found to be characterized by a pattern of repetitive, compulsive behavior pursuant to the provisions of N.J.S.A. 2C:47-3," i.e., at sentencing.  See N.J.S.A. 2C:7-13(b)(2) (emphasis added).  In addition, although N.J.S.A. 2C:47-3 deals with sentencing and N.J.S.A. 2C:7-13(b)(2) is relevant only after a sentence is served, both statutes require a determination about whether the offender's conduct -- i.e., the underlying sex offense -- was repetitive and compulsive viewed at the time the offender committed the offense.  See In re Registrant D.F.S., 446 N.J. Super. 203, 207-08 (App. Div. 2016) ("[T]he decision whether . . . an offender's individual registration record 'shall be made available to the public on the Internet registry' depends on the nature of [the] sexual offenses at the time [the offender] committed them, and not on [the offender's] mental condition at the time of the tier hearing." (quoting N.J.S.A. 2C:7-13(e))).

### B.

A challenge to the validity of the 2014 Amendment shortly followed its enactment.  In Hoffman, two convicted sex offenders filed a class action

19

lawsuit challenging the 2014 Megan's Law amendment mandating that certain sex offenders' information -- i.e., those with a low or moderate risk of reoffending whose conduct was found to be repetitive and compulsive -- be published on the sex offender internet registry, N.J.S.A. 2C:7-13(b)(2). 144 F. Supp. 3d at 657. The plaintiffs argued that the 2014 Amendment violated their state and federal procedural due process rights because "their sentencing hearings only employed a preponderance of the evidence standard to find their conduct compulsive and repetitive," whereas being placed on the internet registry requires "an additional hearing to establish compulsive and repetitive behavior by clear and convincing evidence after they have completed their state-mandated treatment." Id. at 668-69.

The defendant, New Jersey's Attorney General, moved to dismiss the plaintiffs' complaint in its entirety for failure to state a claim. Id. at 657. The United States District Court for the District of New Jersey granted the motion in part, dismissing all but the plaintiffs' federal procedural due process claim. Id. at 657, 669 n.12.

As to the plaintiffs' procedural due process claim emanating from the New Jersey Constitution, the district court held that the 2000 Amendment to the New Jersey Constitution "extinguish[ed] any privacy rights sex offenders might have had vis-à-vis the [sex offender internet registry], thereby

20

abrogating the procedural due process rights that the [E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997)] court had found under the New Jersey Constitution." Id. at 669. But in allowing the plaintiffs' federal procedural due process claim to continue, the court determined that the Third Circuit in A.A. v. New Jersey, 341 F.3d 206 (3d Cir. 2003), "found sex offenders' privacy interests in their personal information emanates from the federal constitution" and that E.B.'s procedural safeguards therefore still apply. Ibid. Accordingly, the district court held that using a preponderance of the evidence standard "may deprive" the plaintiffs of E.B.'s procedural protections and that "under the facts alleged, the [Federal] Due Process Clause requires that the State prove [the plaintiffs'] compulsivity and repetitiveness by clear and convincing evidence." Id. at 671-72.

The Hoffman parties subsequently settled the case, and the district court entered a Consent Order in March 2017 memorializing the agreement. Among other provisions, the parties agreed that

> [t]he Internet registry record of any offender whose conduct was found on or after July 1, 2014 to be characterized by a pattern of repetitive, compulsive behavior pursuant to the provisions of N.J.S.A. 2C:47-3 under a "preponderance of the evidence" burden of proof whose risk of re-offense is moderate or low and for whom the court has not ordered notification in accordance with paragraph (2) of subsection c. of N.J.S.A. 2C:7-8 shall not be subject to public viewing on the Internet registry established pursuant to

21

N.J.S.A. 2C:7-12 et seq. unless and until the State, in a sentencing proceeding conducted pursuant to N.J.S.A. 2C:47-3, a Megan's Law tier classification hearing or such other judicial proceeding as may be determined by the Administrative Office of the Courts, establishes by clear and convincing evidence that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior.

[L.A. v. Hoffman, Stipulation and Order, ¶ 3, 14-cv-6895 (Mar. 16, 2017) (emphases added).]

The Consent Order also provided that the Attorney General may effectuate the Order "through the issuance of Attorney General Guidelines, directives, trainings, and/or any other manner" the Attorney General deemed appropriate. Id. at ¶ 4.

Months after the Consent Order, the Acting Administrative Director of the Courts advised the Attorney General and Public Defender that "the determination to include certain sex offenders on the Internet Registry in accordance with the [Hoffman Consent Order], will be decided by Megan's Law judges upon completion of their tier classification and community notification hearing, and not at the time of sentencing." Memorandum from Hon. Glenn A. Grant, J.A.D., Acting Administrative Director of the Courts, Megan's Law -- Compliance with Federal Court Order -- Determining Internet Registry Inclusion of Certain Sex Offenders at the Tier Classification Hearings 1 (AOC Memorandum) (Dec. 28, 2017). The memorandum reiterated that (1)

22

the State's burden of proving that a sex offender's conduct was repetitive and compulsive is by clear and convincing evidence, and (2) Megan's Law judges are to "make the requisite findings at the tier classification hearing." Ibid.

## IV.

### A.

Recognizing that the parties agree they are bound by the Hoffman Consent Order, we hold that under N.J.S.A. 2C:7-13(b)(2), a Megan's Law registrant is entitled to an evidentiary hearing if the registrant demonstrates there exists a genuine issue of material fact about whether the registrant's conduct can be characterized by a pattern of repetitive and compulsive behavior.[7]

---

[7] The parties devote most of their respective briefs to discussions about procedural due process. We recognize the line of cases challenging the constitutionality of Megan's Law both before and after the 2000 constitutional amendment. In this appeal, the parties do not challenge the effect, if any, that the 2000 Amendment may have on the Megan's Law cases cited not only by the parties here, but also relied upon by the parties in Hoffman. Independent of those references, the Hoffman Consent Order and subsequent AOC Memorandum -- both of which do not mention any Megan's Law cases -- sufficiently provide the basis for our holding. Indeed, the State and the Attorney General particularly agree that: (1) they are bound by the Consent Order; (2) the State has the burden to prove at the Megan's Law Tier classification hearing that the registrant's conduct -- at the time it was committed -- was clearly and convincingly repetitive and compulsive; and (3) a Megan's Law registrant facing internet publication under N.J.S.A. 2C:7-13(b)(2) who aptly challenges the State's proofs is entitled to present evidence on the repetitive and compulsive characterization of their conduct.

To raise a genuine issue of material fact, the registrant must interpose more than general denials, self-serving assertions, bald declarations, or vague and conclusory claims. Objections to the State's characterization that a registrant's conduct constituted repetitive and compulsive behavior must be rooted in some reliable or credible evidence. Objections also must be material. "Materiality" bears upon whether the registrant's conduct was clearly and convincingly repetitive and compulsive at the time the underlying sex offense was committed. Therefore, an objection must raise a genuine dispute about the registrant's repetitiveness and compulsiveness. Whether to conduct an evidentiary hearing -- and its scope -- should be left to the sound discretion of the Megan's Law judge, who should state on the record the reasons for granting or denying such a hearing.

"It is black letter law that where a material factual matter is contested, it cannot be relied on without a resolution of the disputed evidence." State v. Hupka, 203 N.J. 222, 241 (2010). In the summary judgment context, a "genuine issue as to any material fact" requires more than just disputing "facts which are immaterial or of an insubstantial nature, a mere scintilla, '[f]anciful, frivolous, gauzy or merely suspicious.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995) (first quoting R. 4:46-2; and then quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)). The

24

facts disputed must be about an issue that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (defining materiality in the summary judgment context as dependent on the applicable substantive law).

Similarly, in the post-conviction context, a defendant seeking post-conviction relief (PCR) may be entitled to an evidentiary hearing upon a showing that "there are material issues of disputed fact that cannot be resolved by reference to the existing record." R. 3:22-10(b). In fact, "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative." Id. at (e)(2).

Those principles generally strike a balance between a party's "opportunity to fully expose [its] case" and "reserv[ing] judicial manpower and facilities." Brill, 142 N.J. at 541-42 (quoting Robbins v. City of Jersey City, 23 N.J. 229, 240-41 (1957)). We find no reason why those legal principles are not equally appropriate when a Megan's Law registrant facing internet publication under N.J.S.A. 2C:7-13(b)(2) seeks an evidentiary hearing to challenge the State's characterization that a registrant's conduct constituted repetitive and compulsive behavior, especially given that the State and Attorney General agree that Megan's Law registrants who adequately

25

challenge material facts, whether in an Avenel report or otherwise, are entitled to proffer evidence at a hearing.

B.

We further hold that, for Tier classification purposes, the State may rely on a psychological report prepared earlier pursuant to N.J.S.A. 2C:47-3. We emphasize, however, that the independent findings by a Megan's Law judge as to compulsivity and repetitiveness must be made based on clear and convincing evidence.

When the State relies upon an Avenel report to meet its burden by clear and convincing evidence, the registrant is not automatically entitled to cross-examine the expert who authored the report. The State and Attorney General both agree that a registrant may always challenge the State's proofs that the registrant's conduct established a pattern of compulsiveness and repetitiveness by introducing their own evidence. But registrants who wish not to introduce their own evidence but only to cross-examine an Avenel expert must articulate with particularity the reasons they need such an opportunity. That is, the registrant must point to a genuine issue of material fact with the expert's report. Once that prerequisite showing has been made, which we anticipate will be rare, the Megan's Law judge has discretion over the scope of the limited evidentiary hearing. We stress that the focus must be on identified

26

disputed issues of material facts -- those applicable to the State's characterization that the registrant's conduct constituted compulsive and repetitive behavior -- which "cannot be resolved by reference to the existing record."  See R. 3:22-10(b), (d) (outlining when a PCR evidentiary hearing is necessary and providing that when such a hearing is granted, the scope "shall be limited to the issue of whether the defendant was improperly convicted").

Furthermore, we do not foreclose the possibility that the State may satisfy its burden of proof by relying solely on an Avenel report that found the registrant's conduct to be a pattern of repetitiveness and compulsiveness for purposes of sentencing.  Whether an Avenel report alone provides clear and convincing evidence that a registrant's conduct was repetitive and compulsive is to be determined on a case-by-case basis by the Megan's Law judge.  See In re Brady, 243 N.J. 395, 411 (2020) ("Clear-and-convincing evidence is that which produce[s] . . . a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the precise facts at issue."  (alterations and omission in original) (quoting In re Williams, 169 N.J. 264, 271 (2001))).

Under those circumstances, the State is not required to produce more evidence to meet its burden, but the Megan's Law judge must make specific

27

factual findings and conclusions about whether the State has met its clear and convincing burden of proof. In other words, the Megan's Law judge may not rely simply on the Avenel expert's <u>conclusion</u> in the report to support a finding that the registrant's conduct was compulsive and repetitive. Instead, the Megan's Law judge must identify <u>aspects of the report on the record</u> that support the judge's independent findings and conclusions. <u>See</u> <u>R.</u> 1:7-4(a).

## V.

Turning to this appeal, the Megan's Law judge found that R.S.'s conduct was clearly and convincingly repetitive and compulsive. She appears to have relied primarily on the 2017 Avenel report's conclusion that R.S.'s behavior was in fact repetitive and compulsive. Although we ordinarily review a trial judge's "conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion," <u>In re Registrant B.B.</u>, 472 N.J. Super. 612, 619 (App. Div. 2022), we need not reach that question here.

Instead, we remand to resolve whether an evidentiary hearing is warranted and, irrespective of that determination, to allow the Megan's Law judge to make additional findings and conclusions in accordance with <u>Rule</u> 1:7-4(a). On remand, the Megan's Law judge may of course continue to rely on the 2017 Avenel report when making independent findings and conclusions

28

regarding R.S.'s conduct, but the remand judge must identify aspects of the report on the record that support those independent findings and conclusions as to whether R.S. was clearly and convincingly repetitive and compulsive.  See R. 1:7-4(a).

## VI.

We therefore vacate the judgment of the Appellate Division as to the single issue before us, and we remand for further proceedings consistent with this opinion.  Internet publication remains stayed pending remand.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.

29